Donald S. Zakarin (dzakarin@pryorcashman.com)
Nia J.C. Castelly (ncastelly@pryorcashman.com)
PRYOR CASHMAN LLP
410 Park Avenue
New York, New York 10022
(212) 421-4100

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES SMALL BUSINESS ADMINISTRATION AS RECEIVER FOR COQUI CAPITAL PARTNERS, L.P., <br><br> Plaintiff, <br><br> v. <br><br> COQUI CAPITAL MANAGEMENT, LLC, et al., <br><br> Defendants. | Civil Action No.: 08-CV-0978 (LTS) <br><br> Related Case No. 06-1564 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**THE AMENDED COMPLAINT AND COMPEL ARBITRATION**

Oral Argument Requested

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

FACTUAL SUMMARY ...................................................................................................... 1

    Coqui Capital Partners LP
    Limited Partnership Agreements ................................................................................... 1

    Coqui Capital Partners LP Enters Receivership ........................................................... 4

ARGUMENT ......................................................................................................................... 6

    I.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED, OR IN THE
       ALTERNATIVE THE ACTION STAYED, AND PLAINTIFF
       SHOULD BE COMPELLED TO ARBITRATE THE DISPUTE ..................... 6

       A.  There Is A Strong Federal Policy In Favor Of Arbitration ........................... 7

       B.  A Valid Agreement To Arbitrate Exists
           Between The SBA/Receiver and Defendants ................................................ 9

          1.   *The Subscription Agreements and*
              *Guarantees incorporate the ALPA by reference.* ................................ 10

          2.   *The SBA, as a third-party beneficiary to the*
              *ALPA, is subject to the arbitration provision.* ..................................... 13

          3.   *The Receiver is estopped from avoiding*
              *the arbitration provision in the APLA.* ............................................... 13

       C.  The Receiver's Breach Of Contract Claims Fall Within
           The Substantive Scope Of The ALPA Arbitration Provision ...................... 14

       D.  The Receiver Should Be Compelled To Submit To Arbitration
           Because It Cannot Prove That Any Of Its Asserted Claims
           Are Not Within The Scope of the ALPA Arbitration Provision .................. 16

CONCLUSION .................................................................................................................... 18

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                                   <u>PAGE(s)</u>

*Ameritrust Co. National Association v. Chanslor*,
   803 F. Supp. 893 (S.D.N.Y. 1992)........................................................................10

*Bank Julius Baer & Co. v. Waxfield Ltd.*,
   424 F.3d 278 (2d Cir. 2005)..................................................................................8

*Borsack v. Chalk & Vermilion Fine Arts, Ltd.*,
   974 F. Supp. 293 (S.D.N.Y. 1997)........................................................................10

*Buckwalter v. Napoli, Kaiser & Bern LLP*,
   No. 01 Civ. 10868LTSHBP, 2005 WL 736216
   (S.D.N.Y. Mar. 29, 2004)  (Swain, J.) .................................................................6

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991)....................................................................................1

*Dean Witter Reynolds, Inc. v.  Byrd*,
   470 U.S. 213 (1985)..........................................................................................7, 8

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*,
   9 F.3d 1060 (2d Cir. 1993)....................................................................................9

*Fisser v. International Bank*,
   282 F.2d 231 (2d Cir. 1960)................................................................................10

*Gordon v. Vincent Youmans, Inc.*,
   358 F.2d 261 (2d Cir. 1965)................................................................................11

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000)..............................................................................................16

*In re HBLS, L.P.*,
   No. 01 Civ. 2025, 2001 WL. 1490696 (S.D.N.Y. Nov. 21, 2001) .............................10, 13

*Huyler's v. Ritz-Carlton Restaurant & Hotel Co. of Atlantic City*,
   1 F.2d 491 (D. Del. 1924)....................................................................................11

*International Audiotext Network, Inc. v. AT&T Co.*,
   62 F.3d 69 (2d Cir. 1995) .....................................................................................1

*Lowry & Co. v. S.S. Le Moyne D'Iberville*,
   253 F. Supp. 396 (S.D.N.Y. 1966).......................................................................12

**<u>CASES</u>**                                                                                          **<u>PAGE(s)</u>**

*McAllister Brothers, Inc. v. A&S Transport Co.,*
    621 F.2d 519 (2d Cir. 1980)..........................................................................9

*Moses H. Cone Mem'l Hospital v. Mercury Construction Corp.,*
    460 U.S. 1 (1983)...................................................................................7, 15

*Oldroyd v. Elmira Savings Bank, FSB,*
    134 F.3d 72 (2d Cir. 1998).........................................................................15

*Preston v. Ferrer,*
    128 S. Ct. 978, 169 L. Ed. 2d 917 (2008) ..................................................7, 8

*Progressive Casualty Insurance Co. v. C.A. Reaseguradora Nacional De Venezuela,*
    991 F.2d 42 (2d Cir. 1993)..........................................................................12

*Provident Bank v. Kabas,*
    141 F. Supp. 2d  310 (E.D.N.Y. 2001) .......................................................14

*R.J. Griffin & Co. v. Beach Club II Homeowners Association, Inc.,*
    384 F.3d 157 (4th Cir. 2004) ......................................................................13

*Republic of Ecuador v. ChevronTexaco Corp.,*
    376 F. Supp. 2d 334 (S.D.N.Y. 2005)..........................................................10

*Sea Spray Holdings, Ltd. v. Pali Finance Group, Inc.,*
    269 F. Supp. 2d 356 (S.D.N.Y. 2003)........................................................6, 8

*Spear, Leeds & Kellogg v. Central Life Assurance Co.,*
    85 F.3d 21 (2d Cir. 1996) ...........................................................................10

*This Is Me, Inc. v. Taylor,*
    157 F.3d 139 (2d Cir. 1998)........................................................................11

*Thomson-CSF, S.A. v. American Arbitration Association,*
    64 F.3d 773 (2d Cir. 1995)................................................................9, 10, 13

*Washington Mutual Finance Group, LLC v. Bailey,*
    364 F.3d 260 (5th Cir. 2004) ......................................................................14

*Williams v. Metzler,*
    132 F.3d 937 (3d Cir. 1997)........................................................................11

*WorldCrisa Corp. v. Armstrong,*
    129 F.3d 71 (2d Cir. 1997).......................................................................8, 15

**<u>STATUTES</u>**                                                    **<u>PAGE(s)</u>**

9 U.S.C. § 1, *et seq.* (West 1999)................................................................1

9 U.S.C. § 3 (West 1999).........................................................................6

9 U.S.C. § 4 (West 1999).........................................................................7

Defendants[1] submit this memorandum of law and accompanying declaration of Donald S. Zakarin ("Zakarin Decl."), in support of their motion, pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq*., to dismiss the Amended Complaint ("Am. Compl.") of plaintiff, the United States Small Business Administration (the "SBA") as Receiver for Coqui Capital Partners LP (the "Plaintiff" or "Receiver") in its entirety and to compel Plaintiff to submit to arbitration.  In the alternative, Defendants move to stay this action pending arbitration in accordance with the FAA and compel Plaintiff to submit to arbitration.

## FACTUAL SUMMARY[2]

### Coqui Capital Partners LP
### Limited Partnership Agreements

Coqui Capital Partners LP ("Coqui") was formed under Delaware law on October 6, 1999.  Zakarin Decl. Exh. A (hereinafter, the "ALPA").[3]  The Limited Partnership Agreement has an effective date of March 6, 2000 ("LPA"), which was the "Closing Date."  Am. Compl. ¶ 63.  As the Amended Complaint admits, between November 1999 and March 2000, each of the Defendants (with the supposed exception of defendants Albert Schwartz, Albert Lyons, David Layton, Sylvia Maslow, Isaac Kier, Jeffrey Davidson and Jeffrey Koffman) executed subscription agreements in which they agreed to be bound by the terms of the LPA and that the subscriber has been provided with a copy of the LPA (collectively, the "Subscription

---

[1] The names of the defendants submitting the present motion are set-forth in the attached Exhibit A (hereinafter collectively referred to as "Defendants").

[2] The facts are taken as alleged in the Amended Complaint (without any concession that such facts are accurate).

[3] On a motion to dismiss, a court can consider documents incorporated by reference in the complaint without converting the motion to one for summary judgment.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (citations omitted); *International Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("'when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment") (citation omitted).

Agreements"). Am. Compl. ¶¶ 64-65. Critically (albeit not mentioned in the Amended Complaint), the Subscription Agreements also contain a contractual five year limitation period providing that the "General Partner may not call for any additional payments [installments of capital] later than five years after the Closing Date."[4] Zakarin Decl. Exh. B (hereinafter, the "Subscription Agreements"). It is undisputed that the SBA's claim in this matter is for allegedly unpaid capital that the General Partner had not called for within 5 years after the Closing Date (which was no later than March 6, 2000). Thus, as of the time that the SBA was appointed Receiver for Coqui on March 3, 2006, the 5 year limitation period had already expired a year earlier.

Defendants Schwartz, Lyons, Layton and Maslow each executed a guaranty in favor of Coqui limited partners the Stella and Albert Schwartz 1994 Grandchildren's Trust, Vestal Venture Capital, LK2ST, Ltd. and IRM Associates, respectively, guaranteeing payment of the limited partner's capital commitments to Coqui (collectively, the "Guarantees"). Am. Compl. ¶¶ 86, 87, 88, 90.[5]

Coqui was licensed by the SBA as a Small Business Investment Company ("SBIC") on April 7, 2000. Am. Compl. ¶ 4. The purpose of the SBA's SBIC program was to encourage investment in small emerging businesses with the SBA encouraging such investments by providing leverage based on a formula tied to the capital of the SBIC (with the capital including the value of the investments made by the SBIC). The SBA conducted regular audits and

---

[4] While the SBA has vaguely suggested that it was unaware of the five year limitation contained in the Subscription Agreements, there is no dispute that the SBA was required to approve all of the partnership documents in order for Coqui to qualify for licensing to receive leverage from the SBA in the form of either debentures or Participating Securities and that the Subscription Agreements are one of the obviously relevant documents that would need to be approved. Thus, it is extremely unlikely that the SBA would not have reviewed and approved of the Subscription Agreements (and if it failed to do so, such failure would not comply with its own procedures).

[5] The Guarantees are obviously subject to any defenses available to the primary obligor. Thus, if any alleged obligation to make a capital contribution was barred by the five year period set forth in the Subscription Agreements, any guarantee of such obligation would be similarly barred.

exercised extensive oversight and control over the affairs of Coqui and other SBIC's, including the ability to require the SBIC to issue periodic capital calls associated with any draw-downs on the leverage being made available by the SBA.  Given the nature of the small emerging businesses in which SBIC's such as Coqui invested, it was not surprising that the investments were inherently risky and many SBIC's have been placed in receivership by the SBA.

In or about 2001, Coqui sought to secure an SBA license to obtain Participating Security Status (as opposed to securing leverage solely from guaranteed debentures which it had obtained previously).  A condition of such SBA license was that the original limited partnership agreement be amended and restated to reflect requirements of Agreement of Limited Partnership for an SBIC with Participating Security Status.  ALPA at 1.  Coqui amended and restated the Limited Partnership Agreement, which became effective as of June 13, 2001 ("ALPA").  Am. Compl. ¶ 68.  While the SBA had already obtained copies of the relevant partnership documents in connection with Coqui's original SBIC license issued in April 2000, in connection with the SBA's granting Coqui Participating Security status as a SBIC, the SBA was again provided with all relevant documents, including a copy of the LPA, the Subscription Agreements and, at a later date, the ALPA. [6]  Am. Compl. ¶ 5.   Indeed, it is undisputed that the SBA's specific approval of all of the relevant partnership documents was required as a condition of licensing and was obtained.

Section 4.09 of the ALPA provides that the SBA is a third-party beneficiary of the ALPA and was granted the right to enforce the provisions of the ALPA, including the obligation of the

---

[6] While the SBA suggests that it lacks subscription agreements for defendants Isaac Kier, Jeffrey Davidson and Jeffrey Koffman, these agreements have been provided to the SBA.  The other subscription agreements were obtained when the SBA took control of Coqui and Defendants understand that the form of the Subscription Agreements were provided to the SBA along with all of the relevant partnership documents in connection with Coqui's original licensing.

partners to make capital contributions, as if the SBA were a party to the ALPA.[7]  Most critically,

however, for purposes of this motion, Section 10.15 of the ALPA states that any dispute between

the parties to the ALPA or LPA is required to be submitted to arbitration:

> Notwithstanding Sections 10.13 and 10.14 hereof, the parties to this Agreement agree that **any dispute or disagreements concerning, pertaining or relating to this Agreement and/or any transactions, occurrences, communications or understandings (or lack of any of the foregoing) relating in any way to this Agreement shall be submitted to arbitration under the laws of the American Arbitration Association by an impartial arbitrator selected by the parties.** (Emphasis supplied.)

**Coqui Capital Partners LP Enters Receivership**

On March 3, 2006, this Court Ordered that Coqui be placed in receivership and appointed

the SBA as receiver.  Am. Compl. ¶ 71.  The SBA, as Receiver, was given all of the powers and

privileges of the General Partner.  Am. Compl. ¶ 83.[8]  Pursuant to Section 5.02 of the ALPA, the

SBA, as Receiver, purported to make a capital call on each of the Defendants (with the exception

of defendants Albert Schwartz, Albert Lyons, and Sylvia Maslow) to pay the remainder of their

allegedly unpaid capital commitments to Coqui.  Am. Compl. ¶¶ 84, 89.[9]

By separate letters dated August 21, 2006, the SBA, as a third-party beneficiary to the

ALPA, and purportedly pursuant to Section 4.08 of the ALPA, made a further capital call on

each of the Defendants (with the exception of defendants Schwartz, Lyons and Maslow) to pay

the remainder of their allegedly unpaid capital commitments to Coqui.  Am. Compl. ¶¶ 85, 89.

---

[7] Of course, the SBA has brought this case in its capacity as Receiver and therefore stands in the shoes of the General Partner and is subject to all of the terms, conditions and limitations of the relevant limited partnership documents, including the ALPA and the Subscription Agreements.

[8] Similarly, the SBA must also be subject to any and all contractual limitations applicable to the General Partner.

[9] Although not stated in the Amended Complaint, this capital call demand was made pursuant to a letter dated May 8, 2006, approximately two months after the commencement of the Receivership.  In addition to being barred by the five year limitations period of the Subscription Agreements executed by the Defendants, such call was also made in violation of the time requirements in Section 5.06(a) of the ALPA.

Here too, this demand ignored the five year limitation of the Subscription Agreements and the requirements of Section 5.06(a) of the ALPA.

Finally, the SBA, by letter dated February 5, 2007, in its capacity as Receiver and by separate letter in its capacity as a third-party beneficiary to the ALPA, and pursuant to Section 4.08 of the ALPA, made demands on defendants Schwartz, Lyons, Maslow and LK2ST Ltd., as guarantors of certain Coqui limited partners, to fund the remainder of their allegedly guaranteed capital commitments to Coqui. Am. Compl. ¶¶ 86-88, 90. Again, this demand ignored the five year limitation of the Subscription Agreements and the requirements of Section 5.06(a) of the ALPA.

Subsequent to the foregoing three separate letters, which were not sent in compliance with the time requirements of Section 5.06(a) of the ALPA and which made demands for the payment of capital despite the five year limitation contained in the Subscription Agreements on the right of the General Partner to make any capital calls, the SBA made no further demand for payment of any allegedly unpaid capital. Rather, acting in its capacity as Receiver and ignoring the explicit requirement that any and all disputes must be arbitrated, on January 30, 2008, almost a year after its last letter, the SBA initiated this action in this Court against Defendants (subsequently filing an Amended Complaint on March 21, 2008) alleging, *inter alia*, breach of the LPA, the ALPA, the individual Subscription Agreements and the individual Guarantees. *See, e.g.,* Am. Compl. ¶ 107 ("As a consequence of Defendant Isaac Kier's failure to honor the terms of the [Subscription] Agreement, LPA and the Amended LPA, the Receiver for Coqui and the Coqui receivership estate have suffered, and continue to suffer, damages[.]"); ¶ 188 ("As a consequence of Defendant Coben's failure to honor the terms of the [Subscription] Agreement, LPA and Amended EPA, the Receiver for Coqui and the Coqui receivership estate have suffered,

and continue to suffer, damages[.]"); ¶ 286 ("As a consequence of Defendant Efraim Kier's failure to honor the terms of the [Subscription] Agreement, LPA and Amended EPA, the Receiver for Coqui and the Coqui receivership estate have suffered, and continue to suffer, damages [.]"); ¶ 382 ("As a consequence of Defendant Osserman's failure to honor the terms of the Osserman Agreement, LPA and Amended LPA, the Receiver for Coqui and the Coqui receivership estate have suffered, and continue to suffer, damages[.]").

Thus, while suing in its capacity as a Receiver, successor in interest to the General Partner of Coqui, and allegedly seeking to enforce the contractual obligations of the Defendants, the SBA has elected to ignore the contractual obligation to arbitrate all disputes.  The Defendants accordingly now seek to dismiss this action based on an unconditional, clear and unequivocal agreement to arbitrate that indisputably is applicable to this matter or, in the alternative, to stay this action pending arbitration.

## ARGUMENT

**I.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED, OR IN THE ALTERNATIVE THE ACTION STAYED, AND PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE THE DISPUTE**

Upon the application of any party, a court can stay the trial of an action if issues are raised that are referable to arbitration pursuant to an agreement in writing between the parties. FAA, 9 U.S.C. § 3 (West 1999).  However, "[w]hen all of the issues raised in a litigation lie within the scope of an arbitration agreement, courts have the discretion to dismiss the action rather than issue an order directing a stay."  *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.,* 269 F. Supp. 2d 356, 366 (S.D.N.Y. 2003) (citation omitted); *see also Buckwalter v. Napoli, Kaiser & Bern LLP*, No. 01 Civ. 10868LTSHBP, 2005 WL 736216 (S.D.N.Y. Mar. 29, 2004)

(Swain, J.) (concluding that all of the plaintiffs' claims were within the scope of the arbitration agreement and dismissing the amended complaint).

Defendants maintain that all of Plaintiffs' claims are subject to the arbitration agreement found in the ALPA, and thus the Amended Complaint should be dismissed. Indeed, it is clear that Plaintiff is seeking to enforce what it conceives to be the obligation of Defendants to make capital contributions to Coqui under the terms of the ALPA, the very agreement which requires all disputes be arbitrated.[10] If the Court, however, determines that any of the claims are not subject to the agreement, the action should be stayed while the applicable claims – which are all of the claims in this matter - are arbitrated.

Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." FAA, 9 U.S.C. § 4. *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983) ("The Act provides two parallel devices for enforcing an arbitration agreement: a stay of litigation . . . and an affirmative order to engage in arbitration[.]").

### A.     There Is A Strong Federal Policy In Favor Of Arbitration

The Federal Arbitration Act creates a strong federal policy in favor of enforcing agreements to arbitrate. *Preston v. Ferrer*, 128 S. Ct. 978, 981, 169 L. Ed. 2d 917, 923 (2008) ("As this Court [has] recognized . . . , the Federal Arbitration Act . . . establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution."); *Dean*

---

[10] It is also worth noting that this action was commenced in January 2008, nearly eight years after the Effective Date of the LPA and after the Closing Date for the Subscription Agreements and nearly seven years after the ALPA. Thus, beyond the five year limitation of the Subscription Agreements, the Plaintiff's claims also raise statute of limitations issues (which, in light of the arbitration requirement of the ALPA, is a further issue to be presented for determination in the arbitration).

*Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) ("We agree with these latter courts that the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."); *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005) ("Through the FAA, Congress has declared a 'strong federal policy favoring arbitration as an alternative means of dispute resolution.'") (citations omitted).

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts <u>shall</u> direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc.*, 470 U.S. at 218 (emphasis in original); *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (quoting same); *Sea Spray Holdings, Ltd.,* 269 F. Supp. 2d at 366 (quoting same).

In deciding a motion to stay or dismiss an action and compel arbitration, the court must determine "'(1) whether the parties agreed to arbitrate, and, if so (2) whether the scope of that agreement encompasses the claims at issue.'" *Bank Julius Baer & Co.,* 424 F.3d at 281 (*quoting Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 666 (2d Cir. 1997)). "[W]hen parties agree to arbitrate all disputes arising under their contract, questions concerning the validity of the entire contract are to be resolved by the arbitrator in the first instance, not by a federal or state court." *Preston*, 128 S. Ct. at 981, 169 L. Ed. 2d at 923 (*citing Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)).[11]

---

[11] Indeed, in *Preston,* the Supreme Court made it clear that even where a special forum was created to address the specific claims that were contractually made subject to arbitration (in *Preston,* such forum being the California Labor Commissioner), the agreement to arbitrate takes precedence. While Plaintiff conceives that the Receivership proceeding somehow preempts the contractual requirements of the ALPA, there is no support in any case authority or federal policy to support such assertion. The Supreme Court has made clear that where there is an agreement to arbitrate, that agreement is to be enforced.

### B.    A Valid Agreement To Arbitrate Exists
####        Between The SBA/Receiver and Defendants

Section 10.15 of the ALPA states that any dispute between the parties to the Agreement

is required to be submitted to arbitration:

> Notwithstanding Sections 10.13 and 10.14 hereof, the parties to
> this Agreement agree that any dispute or disagreements
> concerning, pertaining or relating to this Agreement and/or any
> transactions, occurrences, communications or understandings (or
> lack of any of the foregoing) relating in any way to this Agreement
> shall be submitted to arbitration under the laws of the American
> Arbitration Association by an impartial arbitrator selected by the
> parties.

While the SBA was not formally a signatory to the ALPA, it has brought this action in its

capacity as Receiver for Coqui (Am. Compl. ¶ 1), successor in interest to the General Partner of

Coqui, seeking to enforce what it perceives to be the contractual obligations of the Defendants

under the ALPA.  It is manifest that the SBA cannot parse the ALPA, seeking, in its capacity as

Receiver, to enforce provisions of which it approves while disregarding those provisions it now

wishes did not exist.  The SBA is successor in interest to the General Partner of Coqui and is

therefore bound by all of the terms and conditions of the Subscription Agreements and the

ALPA, including Section 10.15, which requires arbitration of all disputes.  *See Thomson-CSF,*

*S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) ("This Court has made clear

that a nonsignatory party may be bound to an arbitration agreement if so dictated by the

'ordinary principles of contract and agency.'") (citation omitted); *Deloitte Noraudit A/S v.*

*Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993) ("we have held that 'a party

may be bound by an agreement to arbitrate even in the absence of a signature'") (citation

omitted); *McAllister Bros., Inc. v. A&S Transp. Co.*, 621 F.2d 519, 524 (2d Cir. 1980) ("Such a

conclusion, however, would be directly contrary to the established law of this circuit that a party

may be bound by an agreement to arbitrate even in the absence of a signature.") (citations

omitted); *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir. 1960) ("It does not follow, however, that under the [FAA] an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision.").

Even were the SBA not legally indistinguishable from Coqui in its capacity as Receiver and hence effectively a signatory to the ALPA, the Second Circuit has recognized "'five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.'" *Republic of Ecuador v. ChevronTexaco Corp.*, 376 F. Supp. 2d 334, 356 (S.D.N.Y. 2005) (*quoting Thomson-CSF, S.A.*, 64 F.3d at 776).[12]

1.      *The Subscription Agreements and Guarantees incorporate the ALPA by reference*

The Receiver has asserted claims for breach of the ALPA, the individual Subscription Agreements and the individual Guarantees. *See supra*, at 5-6. While only the ALPA (and LPA) contains a provision for arbitration, it is plain that the Subscription Agreements and Guarantees were executed as part of a single unified transaction and concern the subject matter of this action – the alleged obligation of Defendants to make capital contributions to Coqui. The law is clear and unequivocal that "'where two or more written instruments between the same parties concerning the same subject matter are contemporaneously executed, they will be read and interpreted together.'" *Ameritrust Co. Nat'l Ass'n v. Chanslor*, 803 F. Supp. 893, 896 (S.D.N.Y.

---

[12] "Third party beneficiaries of a contract will also be bound by an arbitration clause under ordinary principles of contract." *In re HBLS, L.P.*, No. 01 Civ. 2025, 2001 WL 1490696, at *9 (S.D.N.Y. Nov. 21, 2001). *See also Spear, Leeds & Kellogg v. Central Life Assurance Co.*, 85 F.3d 21, 27-28 (2d Cir. 1996); *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 302 (S.D.N.Y. 1997) ("[L]anguage limiting application of an arbitration clause to the parties to the contract has not precluded application of such clauses to nonsignatories so long as such persons were intended beneficiaries of the contract . . . I therefore find that plaintiff's breach of contract claims, which certainly involve a dispute that 'concerns th[e] Agreement,' fall within the scope of the clause."). While the SBA also claims the status as a third party beneficiary of the ALPA pursuant to Section 4.09, and has sent demand letters supposedly in that capacity, it has not purported to bring this suit in its capacity as third party beneficiary. As the case law reflects, however, the result would be no different were it suing in that capacity. It would still be bound to arbitrate this dispute.

1992) (*quoting Liamuiga Tours v. Travel Impressions, Ltd.*, 617 F. Supp. 920, 927 (E.D.N.Y. 1985)).

Here, even though the ALPA was not executed by all Defendants and even though the ALPA was not executed contemporaneously with the Subscription Agreements or Guarantees, it remains clear that these documents are part of a single unified transaction and the Amended Complaint does not contend otherwise.[13]  Again, the law is clear that in such circumstances the documents must be read together and an arbitration provision will be binding.  *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998) ("Under New York law, all writings forming part of a single transaction are to be read together." (citations omitted)); *Williams v. Metzler*, 132 F.3d 937, 947 (3d Cir. 1997) ("A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together.") (*quoting Restatement (Second) of Contracts* § 202(2)); *Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261, 263 (2d Cir. 1965) ("New York law . . . requires that all writings that form part of a single transaction and are designed to effectuate the same purpose be read together, even though they were executed on different dates and were not all between the same parties." (citations omitted)); *Huyler's v. Ritz-Carlton Rest. & Hotel Co. of Atlantic City*, 1 F.2d 491, 492 (D. Del. 1924) ("It is true that the principle by which instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are considered as one, and receive the same construction as if embodied in one instrument, is of wide application and the illustrative cases are many.").[14]

---

[13] While not relevant to this motion, to the extent that the SBA contends that the ALPA altered or overrode the five year limitations period of the Subscription Agreements executed by Defendants, those Defendants that never executed the ALPA have a further argument against the SBA's claim of liability.

[14] The ALPA provides for the application of Delaware law (Section 10.10).  There appears to be no conflict between the law of Delaware and the law of New York but, were there a conflict, Delaware's conflict of laws would call for the application of New York law given the centrality of New York to the contractual issues in this action.

Moreover, with respect to agreements to arbitrate specifically, the Second Circuit has held that broadly worded arbitration agreements that are not limited to the contracting parties may be incorporated by reference into other agreements.  *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 48 (2d Cir. 1993) ("in *Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966, 973 (2d Cir. 1975), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976) we ruled that a clause in a charter party which provided for arbitration of 'any and all differences and disputes of whatsoever nature arising out of this Charter' was binding on parties to a bill of lading which incorporated the charter party by reference.").  *Accord Lowry & Co. v. S.S. Le Moyne D'Iberville*, 253 F. Supp. 396, 398 (S.D.N.Y. 1966).

The arbitration provision in the ALPA is even broader than the clause at issue in *Compania Espanola de Petroleos*.  The ALPA states that "any dispute or disagreements <u>concerning</u>, <u>pertaining</u> or <u>relating to</u> [the ALPA] and/or any transactions, occurrences, communications or understandings (or lack of any of the foregoing) relating in any way to this Agreement shall be submitted to arbitration[.]"  ALPA § 10.15 (emphasis added).  Section 7 of the Subscription Agreements provides for the acceptance and adoption of "each and every" provision of the LPA (which had an identical arbitration provision).  Section 3 of the Guarantees provides that the Guaranty has agreed to all of the obligations it would have if it were a Limited Partner – which includes an obligation to arbitrate disputes.  Zakarin Decl. Exh. C (hereinafter, the "Guarantees").  Thus, each agreement incorporates the terms of the limited partnership agreement by reference, including the provision for arbitration.[15]

---

[15] It would be anomalous if the SBA could avoid a specific alternative dispute resolution mechanism provided for in the very agreement it purports to rely upon by claiming that the Subscription Agreements and Guarantees, which directly relate to the capital contribution obligations of the ALPA, lack an obligation to arbitrate.

2. *The SBA, as a third-party beneficiary to the ALPA, is subject to the arbitration provision*

Again, while the SBA has not brought this suit in its capacity as an alleged third party beneficiary, the law is clear that a non-signatory is bound by the terms of a broad arbitration provision in an agreement if the non-signatory is a third-party beneficiary of the agreement. *In re HBLS, L.P.*, No. 01 Civ. 2025, 2001 WL 1490696, at *9 (S.D.N.Y. Nov. 21, 2001) ("Third party beneficiaries of a contract will also be bound by an arbitration clause under ordinary principles of contract."); Williston on Contracts § 364A ("Where the contract contains an arbitration clause which is legally enforceable, the general view is that the beneficiary is bound thereby to the same extent that the promisee is bound.").

The SBA specifically admits that it has made a demand for payment of allegedly unpaid capital in its capacity as an alleged third party beneficiary pursuant to Section 4.09 of the ALPA Am. Compl. ¶¶ 77, 85. While it has not sued in that capacity, if it were to now try to pursue a separate claim in that capacity, it would still be bound to arbitrate this dispute. Under ordinary principles of contract, consistent with applicable law, the SBA is bound by the terms of the arbitration provision of the ALPA.

3. *The Receiver is estopped from avoiding the arbitration provision in the APLA*

"In the context of arbitration, the doctrine [of equitable estoppel] applies when one party attempts 'to hold [another party] to the terms of [an] agreement' while simultaneously trying to avoid the agreement's arbitration clause." *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc.*, 384 F.3d 157, 160-61 (4th Cir. 2004) (*quoting Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838 (7th Cir. 1981)). *See also Thomson-CSF, S.A.*, 64 F.3d at 779 ("Had [plaintiff] *directly* benefited from the Working Agreement by . . . enforcing

the exclusivity provisions of the Agreement, it would be estopped from avoiding arbitration." (emphasis in original)); *Washington Mutual Finance Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004) ("Numerous federal circuit courts, including this one, have recognized the operation of the doctrine of equitable estoppel on non-signatories in an arbitration context." (citations omitted)). Thus, a non-signatory plaintiff may be compelled to arbitrate if it seeks to enforce terms of a contract containing an arbitration provision.

The SBA has elected to ignore the arbitration requirement of the ALPA, Subscription Agreements and Guarantees in bringing this action in this Court, while at the same time claiming that Defendants have breached these very same agreements and seeking recovery of allegedly unpaid capital due, if at all, solely under the terms of these agreements. The SBA, however, cannot claim breach of an agreement and seek recovery thereunder while disregarding the specific arbitration requirement of the very same agreement. It is bound to arbitrate its claims and is estopped from pursuing its claims outside of an arbitral forum.

The parties to the ALPA, which was specifically reviewed and approved by the SBA, agreed to arbitrate all disputes. ALPA § 10.15. The Subscription Agreements and the Guaranties incorporate the arbitration provision. *See* Subscription Agreements § 3; Guarantees § 7. Therefore, the doctrine of equitable estoppel prevents the SBA, in its capacity as Receiver (and in any other capacity in which it may have chosen to pursue its claims) from avoiding arbitration of these claims.

### C.     The Receiver's Breach of Contract Claims Fall Within The Substantive Scope Of The ALPA Arbitration Provision

"When considering whether a particular dispute falls within an agreement to arbitrate, the strong federal policy in favor of arbitration requires courts to resolve any doubts regarding the scope of arbitrable issues in favor of arbitration." *Provident Bank v. Kabas*, 141 F. Supp. 2d

310, 315-16 (E.D.N.Y. 2001) (*citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Oldroyd v. Elmira Savings Bank, FSB,* 134 F.3d 72, 76 (2d Cir. 1998); *Chelsea Square Textiles, Inc. v. Bobmay Dyeing and Mfg. Co.*, 189 F.3d 289, 294 (2d Cir. 1999)).  The Second Circuit has held that "the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." *Oldroyd*, 134 F.3d at 76 (citation omitted) (internal quotations omitted); *WorldCrisa Corp.*, 129 F.3d at 74 (quoting same).

    The arbitration clause in the ALPA is indisputably broad.[16]  By its terms, it applies to "any dispute or disagreements concerning, pertaining or relating to" the ALPA and/or to the "transactions" or "occurrences" relating in any way to the ALPA.  ALPA § 10.15 (emphasis added).  It is indisputable that the SBA's claims arise under and relate to the ALPA and to the transactions or occurrences relating to the ALPA.  The Amended Complaint specifically sets forth claims for breach of the ALPA, Subscription Agreements and the Guarantees.  The recovery sought by the SBA is the allegedly unpaid capital owed, if at all, under the ALPA.  The SBA's professed basis for standing to assert claims of breach arise in its capacity as Receiver and hence successor-in-interest to the General Partner of Coqui.  It is indisputable that the arbitration clause applies to this dispute.  Therefore, the SBA is bound to arbitrate its claims.

    As noted above, to the extent that the SBA were to argue that its claims under the Subscription Agreements and/or Guarantees were not subject to arbitration – and the SBA has not asserted claims pertaining to the Subscription Agreements or Guarantees that are untethered

---

[16] The references to Section 10.13 (consent to *in personam* jurisdiction in whichever state Coqui is principally located) and 10.14 (waiver of jury trial) of the ALPA do not effect the breadth of the provision.

to the ALPA – such an argument would be to no avail.  It is clear that claims for breach of the

Subscription Agreements and Guaranties are disputes relating "in any way" to the ALPA.

 While the Subscription Agreements preclude the SBA from demanding payment of any

unpaid capital on and after March 6, 2005 (a year prior to the commencement of the

Receivership proceeding), it is unquestioned that the capital obligation to which both the

Guarantees and the Subscription Agreements relate are the capital obligations of the ALPA.  In

addition to other defenses to the SBA's claims, the dispute between the SBA and the Defendants

is precisely over whether the SBA has any entitlement to demand payment of any unpaid capital

under the ALPA more than 5 years after March 6, 2000 when the General Partner of Coqui, in

whose shoes the SBA now stands as Receiver, was contractually barred from making such

demand..  If any capital calls are time barred by the Subscription Agreements, then any

Guarantee of any such obligation would similarly be barred.  That is the crux of the present

dispute.  That dispute is, by agreement, committed to arbitration.

  **D.**  **The Receiver Should be Compelled To Submit To Arbitration**
     **Because It Cannot Prove That Any Of Its Asserted Claims**
     **Are Not Within The Scope of the ALPA Arbitration Provision**

 Consistent with the strong policy favoring the express enforcement of agreements to

arbitrate, the Supreme Court has held that the party opposing arbitration bears the burden of

proving that the claims at issue do not fall with the scope of the arbitration agreement.  *Green*

*Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("It would also conflict with our prior

holdings that the party resisting arbitration bears the burden of proving that the claims at issue

are unsuitable for arbitration.") (*citing Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26

(1991); *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 227 (1987)).

Prior to the initiation of this action, the Receiver notified Defendants of its intention to file the present claims in this Court.  Zakarin Decl. Exh. G.  Defendants advised the Receiver that it was their position that, pursuant to the ALPA, any claims for, *inter alia*, breach of the ALPA were required to be arbitrated.  Zakarin Decl. Exh. E.   In response, the Receiver claimed that because Coqui was in a receivership proceeding in this Court, somehow the arbitration provision of the ALPA was no longer operative.  Zakarin Decl. Exh. I.

Thereafter, in response to Defendants' request that the SBA identify some authority for the proposition that a receivership proceeding enables the Receiver to pick and choose among contractual provisions that may be enforced or ignored as the Receiver likes, the SBA identified several cases that supposedly supported its position.  Zakarin Decl. Exh. M.  Defendants reviewed the cases identified by the SBA and confirmed that none of them even remotely suggested that an SBA receivership (or any other receivership) vitiates the strong federal policy in favor of arbitration and the Supreme Court decisions holding that where an agreement to arbitrate has been made, such agreement must be enforced.  Defendants promptly notified the SBA that its purported authority for avoiding its obligation to arbitrate was inapposite.  Zakarin Decl. Exh. N.  Beyond determining that the cases cited by the SBA were inapposite, Defendants' own research has uncovered no case law that even suggests that the strong Federal policy favoring arbitration may be jettisoned along with contractual arbitration requirements merely because a Receivership proceeding has commenced.

**CONCLUSION**

For all of the reasons stated herein, Defendants respectfully request that the Court dismiss the Receiver's Amended Complaint in its entirety and compel the Receiver to submit to arbitration in New York under the laws of the American Arbitration Association by an impartial arbitrator selected by the parties. Alternatively, in the event that this Court should determine not to dismiss this case, it should nonetheless be stayed pending an arbitration to be commenced by the SBA in its capacity as Receiver.

Dated: New York, New York
        March 31, 2008

                                PRYOR CASHMAN LLP


                                By:    /s/ Donald S. Zakarin
                                       Donald S. Zakarin
                                       dzakarin@pryorcashman.com
                                       Nia J.C. Castelly
                                       ncastelly@pryorcashman.com

                                410 Park Avenue
                                New York, New York 10022
                                (212) 421-4100

                                *Attorneys for Defendants*

**EXHIBIT A**

| | |
|---|---|
| Coqui Capital Management, LLC | Joel Siegel |
| Isaac Kier | Baron Silverstein |
| Jeffrey Davidson | Neil Silverstein |
| Jeffrey Koffman | Sunbelt Beverage Company, LLC |
| Allison Koffman | Tech Aerofoam, Inc. |
| Martin Bandier | The Stella and Albert Schwartz 1994 |
| Louis Buck | Grandchildren's Trust |
| Chazen Capital Partners | Kenneth Tuchman |
| Lawrence Coben | Vestal Venture Capital |
| Arthur Davidson | Jeffrey Wilkes |
| Donna Davidson | Kevin Wolf |
| Rick Davidson | |
| Michael Delikat | |
| S. Mark Erenstein | |
| Roger Gladstone | |
| Gabriel Golan | |
| Richard Goldberg | |
| Lynda Goldschein | |
| Michael Hard | |
| IRM Associates | |
| Ellen Sue Kier | |
| Efraim Kier | |
| Sara Kier | |
| Ralph Kier | |
| David Koffman | |
| Burton Koffman | |
| Ruthanne Koffman | |
| Ron Kramer | |
| Michael Kubin | |
| David Layton | |
| LK2ST Limited | |
| Albert Lyons | |
| Marlin Equities, LLC | |
| Sylvia Maslow | |
| Eric Osserman | |
| Plafsky Family Trust | |
| Frederick Poses | |
| Schuyler Associates, LP | |
| Albert Schwartz | |