**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES SMALL BUSINESS ADMINISTRATION AS RECEIVER FOR COQUI CAPITAL PARTNERS, L.P., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| COQUI CAPITAL MANAGEMENT, LLC, a New York limited liability company; et al, | ) ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 08-cv-0978

Related Case No. 06-1564

Judge Laura T. Swain

ECF Case

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**
**AND COMPEL ARBITRATION**

GOTTESMAN, WOLGEL, MALAMY,
FLYNN & WEINBERG, P.C.
ATTORNEYS FOR
Attorneys for the U.S. Small Business
Administration as Receiver for Coqui Capital Partners, L.P.

11 HANOVER SQUARE
NEW YORK, N.Y. 10005
TEL. NO. (212) 495-0100
FAX NO. (212) 480-9797

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................. iii, iv

BACKGROUND............................................................2

ARGUMENT..............................................................4

POINT I
PLAINTIFF'S CLAIMS FOR THE PAYMENT OF UNFUNDED
CAPITAL COMMITMENTS ARE ENFORCEABLE CLAIMS DUE THE
COQUI RECEIVERSHIP ESTATE..................................4

    A. The Subscription Agreement Relied Upon by Defendants Was
       Replaced Upon the Execution of the ALPA .................5

    B. The Action of Coqui's Former Principals Belie the Contention
       That There Is a Limitation On the Receiver's Ability to Collect the
       Unfunded Commitments from the Private
       Limited Partners................................................8

POINT II
THIS COURT IS THE PROPER FORUM FOR, AND HAS JURISDICTION
OVER, THE ACTION TO RECOVER THE PRIVATE LIMITED PARTNERS'
UNFUNDED CAPITAL COMMITMENTS, WHICH ARE ASSETS OF THE
RECEIVERSHIP ESTATE..........................................10

    A.   The Plain Language of the ALPA Excludes From Arbitration
        the Receiver's Claims Brought Against Coqui's Unfunded
        Private Limited Partners for Payment of Their Respective
        Capital Commitments.....................................10

    B.   There is No Written Agreement to Arbitrate the Claims
        Brought by The Receiver for the Collection of the Remaining
        Unfunded Capital Commitments...........................11

    C.   The Specific Language of Section 10.13 Takes Precedence
        Over the General Provisions of Section 10.15

of the ALPA……………………………………………..14

D.    The ALPA Provides a Mechanism for Determining the Proper
Forum to Decide Claims for the Capital Commitments of
Private Limited Partners…………………………………14

E.    Defendants Argument Regarding the Incorporation Is Flawed
and Inapplicable to the ALPA……………………………15

POINT III
EVEN IF THIS COURT FINDS THAT THE RECEIVER'S CLAIMS
AGAINST THE PRIVATE LIMITED PARTNERS ARE SUBJECT TO
ARBITRATION, IT IS PROPER FOR THIS COURT TO RETAIN
JURISDICTION………………………..…………………………16

A.    Congress Intended That the Receivership Court Be the Sole
Forum for All Matters Relating to Small Business Investment
Companies In Receivership……………………………..16

B.    Arbitration Does Not Promote the Objectives of the Small
Business Investment Act's Receivership Provisions and Is Not
the Appropriate Forum for this Claim…………………..18

CONCLUSION………………………..…………………………...20

# TABLE OF AUTHORITIES

## Cases

*Air China Ltd., v. Li,* 208 WL 754450 *1 (S.D.N.Y. March 17, 2008)........................ 12

*Am. S.S. Owners Mutual Protection and INdem. Ass'n, Inv. v. U.S. Lines, Inc.* 529 U.S. 1038 (2000)...................................................................................................................... 19

*Bank Julius Baer & Co. v. Waxfield, Ltd.,* 424 F.3d 278 (2d Cir. 2005) .................................. 13

*Continental Ins. Co. v. Rutledge & Company, Inc., ,* 750 A.2d 1219 (Del.Ch. 2000) ................ 6

*Eli Lilly Do Brasil, Ltda, v. Federal Express Corp.,* 502 F.3d 78, 85 (2d Cir. 2007)................. 14

*Goldberg v. Bear, Stearns & Co., Inc.,* 912 F.2d 1418 (11th Cir. 1990)..................................... 13

*In re U.S. Lines,* 197 F.3d 631 (2d Cir. 1999) ......................................................... 18

*In re West Pan, Inc.* 372 B.R.112 (S.D.N.Y 2007). ............................................................. 6, 7

*Lipford v. New York Life Ins. Co.,* 2003 WL 21313193 *1 (S.D.N.Y. June 9, 2003) ......... 12, 16

*Loughman v. Unum Provident Corp.,* 536 F.Supp.2d 371 (S.D.N.Y. 2008)............................ 14

*Medical Self Care, Inc. v. National Broadcasting Co., Inc., ,* 2003 WL 1622181 *1 (S.D.N.Y. March 28, 2003)................................................................................................... 7, 11

*MBIA Ins. Corp. v. Royal Indemnity Co.,* 426 F.3d 204 (3d Cir. 2005)...................................... 6

*New Castle County, Delaware v. National Union Fire Inss. Co. of Pittsburgh, PA,* 174 F.3d 338 (3d Cir. 1999)............................................................................................................ 11

*New Hampshire Ins. Co. v. Canali Reinsurance Co, Ltd.,* 2004 WL 769775 *1 (S.D.N.Y. April 12, 2004) ..................................................................................................................... 14

*New York ex rel Spitzer v. St. Francis Hosp.,* 289 F.Supp.2d 378, 386 (S.D.N.Y. 2003).... 14, 15

*Pereira v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 525 F.Supp.2d 370 (S.D.N.Y. 2007).... 6

*Preston v. Ferrer,* 128 S.Ct. 978 (2008) .......................................................................... 13, 18

*Progressive Cas. v. C.A. Reaseguradora Nacional,* 991 F.2d 42 (2nd Cir. 1993)...................... 12

*Royal Business Funds,* 29 B.R. 779-780 .................................................................................. 17

*Schaad v. Susquehanna Capital Group,* 2004 WL 1794481 *1 (S.D.N.Y. August 10, 2004)... 12

*Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220 (1987) ................... 16, 17, 18, 19

*United States v. Norwood Capital Corp.,* 273 F.Supp. 236 (D.S.C. 1967)................................. 17

*United States v. Royal Business Funds, Inc.,* 29 B.R.777 (S.D.N.Y. 1983) ............................. 17

*United States Naval Inst. v. Charter Communications, Inc.,* 875 F.2d 1044 (2d Cir. 1989) .... 11

*United States Small Business Administration as Receiver for Acorn Technology Fund, L.P. v. Chimicles,* 447 F.3d 207 (3d Cir 2006) ........................................................................... 15, 16

*WorldCrisa Corp. v. Armstrong,* 129 F.3d 71 (2d Cir. 1997)................................................... 16

**Statutes**

Federal Arbitration Act, 9 U.S.C. §1................................................................................1, 12

Small Business Investment Act of 1958, 15 U.S.C. 661 ............................................1

Small Business Investment Act, 15 U.S.C. §687c...........................................17, 18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNITED STATES SMALL BUSINESS** ) <br> **ADMINISTRATION AS RECEIVER FOR** ) <br> **COQUI CAPITAL PARTNERS, L.P.,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **COQUI CAPITAL MANAGEMENT, LLC,** ) <br> **a New York limited liability company; et al,** ) <br> ) <br> **Defendants.** ) <br> ) | **Civil Action No. 08-cv-0978** <br><br> **Related Case No. 06-1564** <br><br> **Judge Laura T. Swain** <br><br> **ECF Case** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**
**AND COMPEL ARBITRATION**

Plaintiff, the United States Small Business Administration ("SBA") in its capacity as court-appointed receiver ("the Receiver") for Coqui Capital Partners, L.P. ("Coqui"), hereby files its Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint and Compel Arbitration.

In summary, Plaintiff opposes the motion on the grounds that (1) the Receiver's claims against Defendants is not subject to arbitration pursuant to the Coqui Amended Limited Partnership Agreement ("ALPA") under which this action is brought and (2) the Federal Arbitration Act, 9 U.S.C. §1 et al. ("FAA"), does not preclude this Court from exercising the exclusive jurisdiction vested in this Court by Congress through Section 311 of the Small Business Investment Act of 1958, 15 U.S.C. 661 et seq. ("SBIA") which grants this Court exclusive jurisdiction to administer, marshal and liquidate Coqui's assets, including monies due Coqui.  Plaintiff also opposes any allegations that Plaintiff is

prohibited from enforcing its claims for the unfunded capital investments in that the ALPA, which by its own terms constitutes the entire understanding of the parties, contains no such prohibitions.

For these reasons, and as more fully described below and in the Affidavit of Terry George ("George Affidavit") attached as Exhibit 1 to Plaintiff's Opposition, Defendants' motion to dismiss the amended complaint and compel arbitration or, in the alternative, to stay this case pending arbitration should be denied.

### BACKGROUND

Coqui is a Delaware limited partnership which was licensed by the SBA as a Small Business Investment Company ("SBIC"), a federal financial institution, on April 7, 2000 under Section 301(c) of the Small Business Investment Act of 1958 (the "Act"), as amended. Coqui maintained its principal place of business at 1775 Broadway, New York, New York. George Affidavit, §8. In accordance with Section 311 of the SBIA, 15 U.S.C. §687c, by Order dated March 3, 2006 ("the Receivership Order"), this Court appointed SBA as the Receiver for Coqui. The Receivership Order, at paragraphs 1 and 2, grants the Receiver the powers of the general partner and the powers conferred upon a receiver in equity and at law, orders and charges the Receiver with marshaling and liquidating the assets of Coqui and orders the Receiver to preserve and pursue all of Coqui's claims. A true and correct copy of the Receivership Order is attached to the George Affidavit as Exhibit A.

Upon its appointment, the Receiver took possession of Coqui's official books and records and met and conferred with members of Coqui's general partner, Coqui Capital Management, LLC. George Affidavit, ¶ 4. Coqui's books and records included

an Agreement of Limited Partnership as of March, 2000, which Agreement was amended

with the consent of over 50% of the Voting Interest in Coqui via Agreement of Limited

Partnership as of June 13, 2001 ("ALPA").  George Affidavit, ¶6.  A true and correct

copy of the Agreement of Limited Partnership is attached to the George Affidavit as

Exhibit B.

      Coqui's partnership books and records also included various Subscription

Agreements executed by Coqui's Private Limited Partners.  George Affidavit, ¶6. The

Subscription Agreements evidence the amount of each signatory's capital commitment and

investment in Coqui and provide at Section 1, that the signatory subscriber "[w]ill be bound

by the terms of the Limited Partnership Agreement . . ." and at Section 3(c) provide that the

signatory subscriber has been provided with a copy of the LPA.  A true and correct copy of

a Coqui Subscription Agreement is attached to the George Affidavit as Exhibit C.

Subscription Agreements were executed by each of the defendants with the exception of

Defendants Layton, Maslow, Lyons, and Schwartz[1].

      Section 6 of the Subscription Agreements provides that the signatory Private

Limited Partner appoints the General Partner as the respective Private Limited Partner's

attorney-in-fact with full power and authority to execute the LPA, and file and record any

Amendment to the LPA, on behalf of the signatory Private Limited Partner.  The ALPA was

subsequently executed by Coqui's general partner on its own behalf and on behalf of each of

Coqui's private limited partners. See George Affidavit, Exh. B., pg. 82.

---

[1] Defendants Layton, Maslow, Lyons, and Schwartz guaranteed the obligations of other subscribers as more fully alleged in the Amended Complaint.  Defendants Isaac Kier, Jeffrey Davidson, Jeffrey Koffman guaranteed the obligation of Coqui's general partner, Coqui Capital Management, LLC in addition to executing their own Subscription Agreements.

Coqui's books and records indicated that each and every private limited partner named as a defendant herein currently has an unfunded commitment amount due Coqui. By separate letters ("Call Letters"), the earliest of which was dated May 8, 2006, and in accordance with Section 5.02 of the ALPA, the Receiver made a capital call on each of the Defendants for one hundred percent (100%) of their respective unpaid and unfunded limited partnership capital commitments and/or for 100% of the obligations created by their guaranty of the payment of any unpaid and unfunded limited partnership capital commitments. Each Defendant was given at least 10 days to remit the amounts due under their respective commitments or obligations. George Affidavit, §16. Defendants each failed to honor the Call Letters and the terms of the ALPA and remain in default of over $4.4 million in unfunded capital commitments in the aggregate. George Affidavit, §17.

## ARGUMENT

I.  **PLAINTIFF'S CLAIMS FOR THE PAYMENT OF UNFUNDED CAPITAL COMMITMENTS ARE ENFORCEABLE CLAIMS DUE THE COQUI RECEIVERSHIP ESTATE**

Defendants incorrectly argue that Section 2 of the Subscription Agreements, which provides in part that "[t]he General Partner may not call for any additional payments later than five years after the Closing Date", bars the Receiver from pursuing its claims against Defendants. In making this argument, Defendants have failed to correctly interpret the plain language of the ALPA, which provides that any terms of the Subscription Agreements that are not incorporated into the ALPA are replaced. The alleged prohibition on capital calls found in Section 2 of the Subscription Agreements is not incorporated into the ALPA and is therefore invalid and unenforceable.

A.    The Subscription Agreement Relied Upon by Defendants Was Replaced Upon the Execution of the ALPA.

Section 10.16 of the ALPA provides that the ALPA and all other written agreements executed by or on behalf of the General Partner and/or the Private Limited Partners **and** executed or approved by SBA state the entire understanding among the parties relating to the subject matter of the Agreement and that any and all prior memoranda or other documents are merged in and replaced by the ALPA and are without further effect. See George Aff., Exh. B, §10.16 (emphasis added). Section 4.02(b) of the ALPA goes on to define that consent or approval by SBA under the ALPA is "deemed given and effective for purposes of this Agreement only if the consent or approval is given by SBA **in writing** or delivered by SBA as provided in Section 10.05 in writing by personal delivery, telefax, telegram or private courier or by regular mail." See George Aff., Exh. B, §4.02(b) (emphasis added). It is undisputed that the Subscription Agreements were not executed by SBA. Moreover, Defendants have provided no evidence that the Subscription Agreements upon which their argument is based were ever approved by SBA in writing as required under the ALPA[2].

The ALPA, executed by the general partner as power of attorney for each defendant private limited partner, clearly and unambiguously states the entire understanding between the parties and does not contain any limitation of time in which Coqui's general partner (or the Receiver who has the powers thereof) is entitled to call the capital commitments. Delaware courts have held that in interpreting a contract under Delaware law, courts ". . .

---

[2] Defendants cite to paragraph 5 of the Amended Complaint as support for the statement that SBA was provided "with all relevant documents" including "the Subscription Agreements" and that SBA's approval of "all the relevant partnership documents" was required. Def.'s Mem. Supp., p. 3. Paragraph 5 of the Amended Complaint makes no such assertions. Regardless, Defendants have failed to provide any evidence of SBA's written approval as required under the ALPA.

should not look behind the terms and provisions of a clear and unambiguous contract." Continental Ins. Co. v. Rutledge & Company, Inc., 750 A.2d 1219, 1228 (Del.Ch. 2000)[3]. Unambiguous written agreements should be enforced "according to their terms" without the use of extrinsic evidence. Pereira v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 525 F.Supp.2d 370, 375 (S.D.N.Y. 2007) (Swain, J.) (*citing* Alexander & Alexander Serv., Inc. v. Certain Underwriters at Lloyd's London, 136 F.3d 82, 86 (2d Cir. 1998)); MBIA Ins. Corp. v. Royal Indemnity Co., 426 F.3d 204, 210 (3d Cir. 2005). A contract is not ambiguous simply because the parties dispute its interpretation; instead, ambiguity is a question of law to be determined by the court according to an objective standard. Pereira, 525 F.Supp.2d at 375 (*citing* K. Bell & Assoc. v. Lloyd's Underwriters, 97 F.2d 632, 637 (2d Cir. 1996)); In re West Pan, Inc. 372 B.R. 112, 122 (S.D.N.Y. 2007) (*citing* Rohn Indus., Inc. v. Platinum Equity, LLC, 911 A.2d 379, 382 n.3 (Del. 2006)); MBIA, 426 F.3d at 210. On its face, the ALPA establishes that there is no limitation on the Receiver's ability in which to demand and collect the remaining unfunded capital commitments.

Plaintiff's position that the alleged five year limitation on capital calls was replaced and is of no effect is further supported by Section 5.02, which provides that each Private Limited Partner, with at least 10 days prior notice from the General Partner, shall pay such percentage of its Commitment at such time as demanded by the General Partner. Section 5.10 of the ALPA goes on to provide that the Partnership is entitled to enforce against each partner its respective obligation as specified in the ALPA. These provisions

---

[3] Delaware law is the governing law (where federal law is silent) as the ALPA provides at Section 10.10 that it is governed by applicable Federal law and the laws of the State of Delaware. Both Delaware law and New York law are cited herein as Delaware law and New York law are consistent with respect to the interpretation of contracts. See Meritxell, Ltd. v. Saliva Diagnostic Systems, Inc., 1998 WL 40148 *1, *5 (S.D.N.Y. February 2, 1998)(*citing* Bell Atlantic Meridian Systems v. Octel Communication Corp., No. Civ. A 14348 1995 WL 707916 *1, *5 n.3 (Del. Ch. November 28, 1995)).

argue against any allegation that there is a limitation on the time period wherein Coqui's general partner, or the Receiver, can make a capital call and demand payment therein. These provisions also refute the allegation that Section 2 of the Subscription Agreements survived the execution of the ALPA[4]. Thus, it is clear from the actions of Coqui's general partner that the Subscription Agreements' five year limitation did not survive the execution of the ALPA.

Moreover, Defendants' argument contradicts the plain meaning of the ALPA and effectively invalidates and renders meaningless at least four provisions of the ALPA (Sections 5.02, 5.06, 5.10, and 10.16). When interpreting a contract " . . . one of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless." Medical Self Care, Inc. v. National Broadcasting Co., Inc., 2003 WL 1622181 *1, *4 (S.D.N.Y. March 28, 2003)(Swain, J.)(citations omitted). "It is a fundamental rule of contract construction that '[w]hen interpreting a contract the Court must view the document as a whole, giving effect to all of its provisions.'" In re West Pan, 372 B.R. at 122-123 (citing Interim Healthcare, Inc. v. Spherion Corp., 884 A.2d 513, 556 (Del. 2005))

---

[4] Defendants incorrectly argue that demand was improperly made in violation of Section 5.06(a) of the ALPA. Via letter dated April 12, 2005, Coqui was notified that it would be placed into Restricted Operations within 15 days of the letter if it did not cure its condition of capital impairment as that term is defined in the Regulations at 13 C.F.R. §107.1850 (2005). George Affidavit, §10. Coqui did not cure its condition of capital impairment, was placed in Restricted Operations effective April 27, 2005, was placed into liquidation status by SBA effective April 29, 2005 and was notified of the transfer to liquidation via letter dated June 7, 2005. George Affidavit, §11. True and correct copies of the April 12, 2005 and June 7, 2005 letters are attached to the George Affidavit as Exhibits D and E. Thus, even assuming arguendo, that Defendants' argument is correct, the liquidation of Coqui commenced April 29, 2005 and the earliest demand letter sent by the Receiver was sent May 8, 2006, over one year after Coqui was placed by its regulator into liquidation. Moreover, consistent with Section 5.06(b) of the ALPA, SBA informed the General Partner via letter dated October 4, 2005, that if the General Partner did not call the unfunded capital commitments, the Receiver would do so. A true and correct copy of the October 4, 2005 Letter is attached to the George Affidavit as Exhibit F. The Third Circuit has held that, under a provision identical to Section 5.06(b) in the Coqui ALPA, once an SBIC is placed in restricted operations and once the SBA, even in its capacity as receiver, makes demand upon the unfunded limited partners, the obligation to make capital contributions is no longer subject to any other conditions in the limited partnership agreement except as to amount and time to make payment. See SBA as Receiver for Acorn Technology Fund, L.P. v. Chimicles, 447 F.3d 207, 211 (3d Cir. 2006).

(emphasis added).  It is Plaintiff's interpretation of the ALPA, that the ALPA replaced the

Subscription Agreement provisions that were not approved in writing by SBA that gives

effect to the established law of this Court.

      B.      <u>The Actions of Coqui's Former Principals Belie The Contention That There Is a Limitation On the Receiver's Ability to Collect the Unfunded Commitments from the Private Limited Partners.</u>

It is clear from the actions, and omissions, of Coqui's general partner that the

Subscription Agreements' five year limitation did not survive the execution of the ALPA.

Prior to requesting additional Leverage or funding from SBA, Coqui submitted Capital

Certificates dated October 31, 2002 and November 19, 2003 to SBA.  Paragraph 11 of the

Capital Certificates, both of which are executed by defendants Jeffrey Koffman, Isaac Kier

and Jeffrey Davidson as members of Coqui's general partner, state that the capital certificate

is "material for the purpose of inducing SBA to . . . disburse SBA funds in reliance upon

Applicant's statement." Section E of both Capital Certificates is entitled "Conditions to

Exercise of Right to Receive Unfunded Commitments".  Under Section E of both Capital

Certificates, executed by defendants Jeffrey Koffman, Isaac Kier and Jeffrey Davidson as

members of Coqui's general partner, is inserted "[None]".  True and correct copies of the

Capital Certificates are attached to the <u>George Affidavit</u> as Exhibits G and H.

Moreover, during the summer of 2005 Coqui's general partner and SBA engaged in

a series of emails regarding the collection of the capital commitments.  At no time did

Coqui's general partner allege that the commitments were uncollectible for any reason.  A

true and correct copy of electronic correspondence between SBA and Coqui's general

partner from July 5, 2005 through July 8, 2005 is attached to the <u>George Affidavit</u> as

Exhibit I. Finally, after the appointment of the Receiver on March 3, 2006,

representatives of SBA and the Receiver as well as Coqui's general partner took part in a

transfer meeting in Manhattan at which time the remaining balance of the unfunded

capital commitments was specifically discussed with Isaac Kier, a defendant in this

action and a member of Coqui's general partner. At no time did Mr. Kier mention or

express that the collection of the unfunded capital commitments was prohibited or

conditional. George Affidavit, §13. Consequently, the actions of Coqui's general partner,

the power of attorney for the unfunded private limited partners with respect to the ALPA,

belie Defendants' argument and instead support Plaintiff's interpretation of the plain

language of the ALPA.

Even in its own submission to SBA regarding the capital commitments and in its

discussions with the Receiver as late as March, 2006, Coqui's general partner represented

that Coqui's ability to collect upon the unfunded commitments was unconditional. The

Receiver has no reason to believe that the omission of any conditions to the collection of the

capital commitments or any statements made by Coqui's general partner in its submissions

to SBA and/or the Receiver were misleading or incorrect in any way.

Defendants' attempts to escape their obligation to the Coqui receivership estate are

not supported by the plain language of the ALPA. The $4.4 million of unfunded capital

commitments constitute an outstanding receivable of the Coqui receivership estate which is

properly being pursued by the Receiver in this Court as claims due the Coqui receivership

estate.

II.     **THIS COURT IS THE PROPER FORUM FOR, AND HAS JURISDICTION OVER, THE ACTION TO RECOVER THE PRIVATE LIMITED PARTNERS' UNFUNDED CAPITAL COMMITMENTS, WHICH ARE ASSETS OF THE RECEIVERSHIP ESTATE.**

A.     The Plain Language of the ALPA Excludes From Arbitration the Receiver's Claims Brought Against Coqui's Unfunded Private Limited Partners for Payment of Their Respective Capital Commitments.

Defendants argue that the ALPA provides a basis for arbitration of the claims brought by Plaintiff against Coqui's private limited partners for payment of their respective unfunded capital commitments. This argument, however, ignores the plain language of the very section Defendants rely on, Section 10.15 of the ALPA, which provides:

> Notwithstanding Sections 10.13 and 10.14 hereof, the parties to this Agreement agree that any dispute or disagreement concerning, pertaining or relating to this Agreement and/or any transactions, occurrences, communications or understandings (or lack of any of the foregoing) relating in any way to this Agreement shall be submitted to arbitration under the laws of the American Arbitration Association by an impartial arbitrator selected by the parties. (emphasis added).

Section 10.13, styled *Jurisdiction*, provides that

> In any suit, action or proceeding arising out of or in connection with the Private Limited Partners' investments in the Partnership, the Private Limited Partner consents to the in personam jurisdiction of any court of competent jurisdiction and proper venue within the state in which the Partnership has its principal place of business at the time of any suit, action or proceeding. (emphasis added).

Section 10.14, styled *Waiver of Jury Trial*, provides that each partner agrees not to elect to a trial by jury. Clearly, a reading of both Section 10.13 and Section 10.14 in conjunction with the arbitration provision of Section 10.15 indicates that the claims brought by the Receiver in this action against Coqui's private limited partners, and those

10

individuals who guaranteed payment of their obligations, are <u>not</u> claims subject to arbitration.   The plain language of Section 10.13 of the ALPA clearly states that a claim against a private limited partner regarding its investment (i.e. capital commitment) is to be brought in a court with competent jurisdiction over Coqui; that court is this Court acting as Coqui's receivership court[5].   This interpretation is not only consistent with the plain meaning of the contract, but is the only possible interpretation that can give meaning to each paragraph of the ALPA.  See <u>United States Naval Inst. v. Charter Communications, Inc.</u>,  875 F.2d 1044, 1049 (2d Cir.1989) (*holding* that a court should interpret a contract in a way that ascribes meaning, if possible, to all of its terms)(citations omitted); <u>Medical Self Care, Inc.</u>, 2003 WL 1622181 at *4; <u>New Castle County, Delaware v. National Union Fire Inc. Co. of Pittsburgh, PA</u>, 174 F.3d 338, 349 (3d Cir. 1999)(*citing* Restatement (Second) of Contracts §203(a)(1979)).

> B.    <u>There Is No Written Agreement to Arbitrate the Claims Brought by The Receiver for the Collection of the Remaining Unfunded Capital Commitments.</u>

Section 3 of the FAA, provides in part that

> "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration <u>under an agreement in writing for such arbitration</u>, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement,

---

[5] The Receiver, and therefore the receivership, is an arm of, and a creature of, this Court and each and every one of the Receiver's actions are subject to the approval of this Court.  See <u>In re Comcoach Corp.</u>, 698 F.2d 571, 574-575 (2d Cir. 1983) (citations omitted).  As described in the Memorandum of Law submitted in support of the Receiver's motion to establish of a claims bar date procedure, the assets that are part of the Coqui receivership are located throughout the United States.  <u>United States v. Coqui Capital Partners, LP</u>, Case No. 06-1564 (Docket No. 10).  Although some of Coqui's operations are conducted in Washington, D.C. and St. Louis, Missouri and its investments (and therefore liquidation activities) occur and have occurred in Puerto Rico as well as New York, Coqui's principal place of business remains in Manhattan where this Court is located.  See <u>R.G. Berry Corp. v. Mushroom Makers, Inc.</u>, 612 F.2d 651, 655 (2d Cir. 1979).

providing the applicant for the stay is not in default in proceeding with such
arbitration.

Federal Arbitration Act, 9 U.S.C. §3 (emphasis added).  The party seeking to compel

arbitration has the burden of demonstrating by a preponderance of the evidence the

existence of an agreement to arbitrate.  Progressive Cas. v. C.A. Reaseguradora Nacional,

991 F.2d 42, 46 (2nd Cir.1993).  When deciding a motion to compel arbitration, the court

must determine whether there is an issue of fact as to the making of the agreement for

arbitration.  Air China Ltd., v. Li, 208 WL 754450 *1 (S.D.N.Y. March 17, 2008)(Swain,

J.)(citing Bensadown v. Jobe_Riat, 316 F.3d 171, 175 (2d Cir. 2003)).  In the event a

valid agreement to arbitrate a dispute exists, the court can exercise no discretion under

the FAA and ". . . shall direct the parties: to proceed to arbitration on issues as to which

an arbitration agreement has been signed."  Lipford v. New York Life Ins. Co., 2003 WL

21313193 *1, *5 (S.D.N.Y. June 9, 2003)(Swain, J.) (quoting Dean Witter Reynolds, Inc.

v. Byrd, 470 U.S. 213, 218 (1985)).

      Thus, in order for this Court to grant the relief, or the alternative relief, sought by

the Defendants, there must be an enforceable agreement to arbitrate as " 'a party cannot

be required to submit to arbitration any dispute which he has not agreed to submit.'"

Schaad v. Susquehanna Capital Group, 2004 WL 1794481 *1, *4 (S.D.N.Y. August 10,

2004)(Swain, J.)(quoting Thomsom-CSF S.A. v. American Arbitration Ass'n, 64 F.3d

773, 776 (2d. Cir 1995)).  Sections 10.13 and 10.15 of the ALPA clearly establish that no

written agreement to arbitrate the Receiver's claim for the unpaid capital investment

exists under the ALPA, at law or in equity. See Lipford, 2003 WL 21313193 at *4.

      Plaintiff's interpretation of the restrictions on arbitration contained in the ALPA is

also consistent with established case law interpreting Section 2 of the FAA, 9 U.S.C. §2,

upon which Defendants rely.  In <u>Goldberg v. Bear, Stearns & Co., Inc.</u>, the Eleventh Circuit held that a provision similar to the one in Section 10.13 of the ALPA had the effect of removing the claims from what otherwise would have been binding arbitration. The Court found that by including a provision where parties were not prohibited from ". . . pursuing any claim or claims arising under the federal securities laws in any court of competent jurisdiction" the Agreement did not compel arbitration on that particular issue. <u>Goldberg</u>, 912 F.2d 1418, 1421(11th Cir. 1990). The <u>Goldberg</u> provisions are nearly identical to the provisions in the ALPA as the Receiver is bringing a cause of action under the ALPA, which contains an agreement that a court of competent jurisdiction, and not an arbitrator, hear and adjudicate the Receiver's claims for payment of the unfunded capital commitments.

In <u>Preston v. Ferrer</u>, 128 S.Ct. 978 (2008), the Supreme Court held that once parties have agreed to arbitrate disputes regarding a contract, it is an arbitrator that decides the validity of the contract. <u>Preston</u>, 128 S.Ct. at 981 (citations omitted). <u>Preston</u> is inapplicable to this action brought by the Receiver as there is no agreement to arbitrate disputes regarding collection of the private limited partners' unfunded investments. It is indisputable that the Receiver's claims and action for the collection of the private limited partners' unfunded investments is, pursuant to Section 10.13 of the ALPA, outside the scope of the arbitration provision found at Section 10.15 of the ALPA. <u>See Bank Julius Baer & Co v. Waxfield, Ltd.</u>, 424 F.3d 278, 281 (2d Cir. 2005)(*holding* that in order to decide a motion to compel arbitration, the court must determine whether the parties have agreed to arbitrate and whether the scope of the agreement to arbitrate encompasses the claims at issue)(citations omitted).

13

C.    The Specific Language of Section 10.13 Takes Precedence Over the General Provisions of Section 10.15 of the ALPA.

The Second Circuit and this Court have held that a specific provision takes precedence over a more general provision. Eli Lilly Do Brasil, Ltda. v. Federal Express Corp., 502 F.3d 78, 85 (2d Cir. 2007) (citations omitted); Loughman v. Unum Provident Corp., 536 F.Supp.2d 371, 376 (S.D.N.Y. 2008). This Court has also held that specific words will limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate. New York ex rel Spitzer v. St. Francis Hosp., 289 F.Supp.2d 378, 386 (S.D.N.Y.2003) (citations omitted). "Narrow arbitration clauses cannot authorize compulsion of the arbitration disputes beyond their scope." New Hampshire Ins. Co. v. Canali Reinsurance Co, Ltd., 2004 WL 769775 *1, *2 (S.D.N.Y. April 12, 2004)(Swain, J.)(citations omitted). Accordingly, the specific jurisdictional provision found at Section 10.13 of the ALPA, which specifically refers to claims brought for collection of the private limited partners' capital investments, limits the more general arbitration provision found at Section 10.15 of the ALPA to other disputes not relating to the private limited partners' investment in Coqui.

D.    The ALPA Provides a Mechanism for Determining the Proper Forum to Decide Claims for the Capital Commitments of Private Limited Partners.

The ALPA itself provides a hierarchy for the interpretation of a perceived conflict between its own provisions. Section 1.02 of the ALPA provides that Annex GDP and Annex OP are incorporated in the ALPA. SBA Annex OP provides at Section 1.2 that in the event of any conflict between the provisions of the ALPA and the Act (SBIA), the provisions of the Act shall control. Consequently, even if the arbitration provision at

14

Section 10.15 is enforceable with respect to the collection of unfunded commitments from Coqui's private limited partners despite the limiting language of Section 10.13, the arbitration provision clearly conflicts with the SBIA which provides for exclusive jurisdiction over Coqui and all of its assets by this Court. Thus, the specific terms of the ALPA and the Annex OP provide that this Court is the proper forum for adjudication of the action by the Receiver against the private limited partners for their unfunded capital investment. New York ex rel Spitzer, 289 F.Supp.2d at 386.

     E.    Defendants Argument Regarding the Incorporation Is Flawed and Inapplicable to the ALPA.

Defendants argue that because the Subscription Agreement incorporates the LPA and any amendments (the ALPA), the Subscription Agreements remain in full force and effect and the arbitration provisions of the ALPA govern. This argument is not only flawed and is contradictory with the plain language of the ALPA.

In United States Small Business Administration as Receiver for Acorn Technology Fund, L.P. v. Chimicles, 447 F.3d 207 (3d Cir. 2006), an opinion dealing with arbitration agreements in the SBIC/receivership context, the Third Circuit held that despite an incorporation clause in the subscription agreement, a subscription agreement and a limited partnership agreement were two distinct, separate agreements. Chimicles, 447 F.3d at 210. The Chimicles court went on to hold that an arbitration provision in a limited partnership agreement was not enforceable in an action brought by SBA as receiver for a failed SBIC. In interpreting a provision of the Acorn limited partnership agreement that is nearly identical to Section 5.06(b) of Coqui's ALPA, the Chimicles court held that once the SBIC was placed into restricted operations by its regulator SBA, as Coqui has been, and once SBA was appointed receiver and made demand for payment,

the obligations of private limited partners to make any contributions was not subject to any conditions set forth in the limited partnership agreement *including arbitration*, other than amount and time to make payment [6]. Chimicles, 447 F.3d at 211.

The plain language of the ALPA and the Annex OP indicates that (1) since the arbitration provision conflicts with the exclusive jurisdiction provision of the SBIA, a valid written agreement to arbitrate does not exist; (2) the very claims brought by the Receiver are <u>not</u> subject to the arbitration provision of Section 10.15 under Section 10.13 of the ALPA and (3) this Court is the proper forum as the Court of competent and exclusive jurisdiction to hear and adjudicate the Receiver's claims.

III.   **EVEN IF THIS COURT FINDS THAT THE RECEIVER'S CLAIMS AGAINST THE PRIVATE LIMITED PARTNERS ARE SUBJECT TO ARBITRATION, IT IS PROPER FOR THIS COURT TO RETAIN JURISDICTION**

Even if this Court finds that the ALPA mandates that the Receiver's claims against Coqui's private limited partners are subject to arbitration, this Court is still entitled to retain jurisdiction over this action. Although there is a strong federal policy in favor of arbitration, a party may overcome the presumption of arbitrability by proving "with positive assurance" that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. <u>WorldCrisa Corp. v. Armstrong</u>, 129 F.3d 71, 74 (2d Cir. 1997)(citations omitted); <u>Lipford</u>, 2003 WL 21313193 *5.

A.   <u>Congress Intended That the Receivership Court Be the Sole Forum for All Matters Relating to Small Business Investment Companies In Receivership</u>

In <u>Shearson/American Express, Inc. v. McMahon</u>, the Supreme Court held that the FAA's mandate that arbitration be enforced upon a claim based on a statutory right

---

[6] The arguments and defenses alleged by Defendants as to time have been refuted in Argument Section I A and I B, *supra*.

could be overridden by a showing of contrary Congressional command which must be deducible from a statute's text or legislative history or from an inherent conflict between arbitration and the respective statute's underlying purpose. Shearson, 482 U.S. 220, 226-227 (1987)[7]. The text and purpose of the SBIA clearly indicate that Congress intended to exempt claims brought by the court appointed receiver of an SBIC from any forum save the Receivership Court.

Section 311 of the SBIA, 15 U.S.C. §687c, grants the receivership court exclusive jurisdiction to oversee the assets and liquidation of an SBIC in receivership[8]. Although the SBIA was passed after the FAA, Congress still provided only one legal forum for the administration, and resolution of conflicts over, an SBIC and its assets. The court in United States v. Norwood Capital Corp., 273 F.Supp. 236, 240-241 (D.S.C. 1967), found that the legislative history of the SBIA was "clear that the purpose of a federal receivership was to protect assets pending the Small Business Administration's recovery on its investment. . . . ." This Court in United States v. Royal Business Funds, Inc., 29 B.R. 777 (S.D.N.Y. 1983), held that in the SBIA Congress showed a clear intent to exercise jurisdiction to the exclusion of all other courts and went on to distinguish a federal receivership under the SBIA with a receivership under the federal securities laws, the subject of Shearson and its progeny. Royal Business Funds, 29 B.R. 779-780.

The majority of the cases cited by Defendants in support of arbitration are inapposite as they involved disputes between private litigants with clearly applicable

---

[7] The Court subsequently noted that Shearson stood for the proposition that even in light of an exclusive jurisdiction provision parties could waive their right to have their claim heard in federal court and arbitrate the claims instead. Matsushita Electric Industrial Co., Ltd. v. Epstein, 516 U.S. 367, 384-385 (1996). In accordance with Section 10.13 of the ALPA, the Receiver's right to have the clams against the unfunded Private Limited Partners heard in federal court has not been waived.
[8] It is undisputed that a claim for monies due a receivership estate, in this case the unfunded capital commitments of Private Limited Partners, is an asset and a receivable of the receivership estate.

arbitration provisions. In contrast, the ALPA contains a specific provision at Section 10.13 which preserves the statutory grant of exclusive jurisdiction granted this Court by Congress as more fully described in *Argument* Sections II (A) through II (C) of this Memorandum, *supra*.

The most recent Supreme Court ruling regarding arbitration, <u>Preston v. Ferrer</u>, 128 S.Ct. 978 (2008), stands for the proposition that an agreement to arbitrate under the FAA supercedes the primary jurisdiction of a state forum to resolve a dispute between the parties to the agreement. In contrast, in the action brought by the Receiver against Coqui's private limited partners there is no agreement to arbitrate the Receiver's specific claims. Furthermore, in <u>Preston</u> the Court ruled that a state forum did not preempt arbitration. Once again, the action brought by the Receiver is distinguishable in that the SBIA's exclusive jurisdiction provision, 15 U.S.C. § 687c, was established by the United States Congress and the text and legislative history of the statute speak to Congress's intent as required by the Court. <u>See</u> <u>Shearson</u>, 486 U.S. 226-227.

      B.     <u>Arbitration Does Not Promote the Objectives of the Small Business Investment Act's Receivership Provisions and Is Not the Appropriate Forum for this Claim.</u>

As in the bankruptcy context, which, although governed by a different federal statute, has the same general purpose of marshaling and distributing assets for the benefit of creditors, arbitration does not promote the objectives of the receivership provisions of the SBIA. The Second Circuit has opined that a bankruptcy court has discretion not to enforce an arbitration clause if enforcement of the clause " 'would seriously jeopardize the objectives of the [Bankruptcy] Code.' " <u>In re U.S. Lines,</u> 197 F.3d 631, 640 (2d Cir.1999), *cert. denied*, <u>Am. S.S. Owners Mutual. Protection and Indem. Ass'n, Inc. v.</u>

U.S. Lines, Inc., 529 U.S. 1038 (2000). Just as arbitration in certain contexts would jeopardize the objectives of the Bankruptcy Code, so would arbitration jeopardize the objectives of the federal receivership under the SBIA where the issue to be arbitrated involves the collection of capital commitments due Coqui. These unfunded and uncollected commitments are core assets of the receivership estate which the Receiver is attempting to marshal and collect for the benefit of the estate's creditors[9]. Consequently, this case is squarely on point with at least one of the exceptions noted in Shearson to the mandate to compel arbitration: an inherent conflict between arbitration and a federal statute's underlying purpose. Shearson, 482 U.S. at 227-228.

The Congressional directive under the SBIA for this Court as the Receivership Court to take exclusive jurisdiction over Coqui and the clear conflict between arbitration and the SBIA's statutory mandate that this Court to be the sole forum to marshal and administer Coqui's assets for the benefit of its creditors. Therefore, this Court should deny Defendants' Motion to Dismiss the Amended Complaint and Compel Arbitration, should deny the alternative relief requested by Defendants to stay this case pending arbitration and should retain jurisdiction over the action brought by the Receiver under the ALPA against Coqui's private limited partners for collection of their respective and defaulted obligations owed the Coqui receivership estate.

---

[9] As reported in the Second Receiver's Report, filed as an exhibit with this Court on April 15, 2008 (Docket No. 29, Exh. 1), all valid claims of creditors have been paid with one exception: the judgment obtained by SBA, the federal agency, on Coqui's defaulted Debentures remains unpaid. Even if the balance of the unfunded capital commitments is collected *in toto*, there will not be enough funds collected to pay SBA in full.

## CONCLUSION

The provisions of the Amended Limited Partnership Agreement under which the Receiver brings this suit for collection of unfunded limited partnership commitments does not contain a written agreement to arbitrate the Receiver's claims against Coqui's private limited partners. The provisions of the Amended Agreement of Limited Partnership and the SBIA specifically provide that this Court is the sole forum to adjudicate the Receiver's causes of action. Regardless, Congress has specifically expressed its intent through the text of the SBIA and through its legislative history that this Court enjoy and exercise exclusive jurisdiction over Coqui and the Coqui receivership estate to the exclusion of arbitration. For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to Dismiss the Amended Complaint and Compel Arbitration or, in the alternative, for this Court to stay this case pending arbitration, be denied.

Respectfully submitted,

Dated: New York, New York
      May 6, 2008

By: _____
    ARLENE M. EMBREY
    Trial Attorney
    U.S. Small Business Administration
    409 Third Street, S.W., 7th Floor
    Washington, DC 20416
    Telephone: (202) 205-6976
    Facsimile: (202) 481-0324
    Email: arlene.embrey@sba.gov

By: _____
    Steven Weinberg, Esq.
    Gottesman, Wolgel, Malamy,
    Flynn & Weinberg, P.C.

20

Attorneys for the U.S. Small Business
Administration as Receiver for Coqui
Capital Partners, L.P.
11 Hanover Square, 4th Floor
New York, New York 10005
Tele: 212-495-0100

action, and reside in the State of New York.

2.    On May 6, 2008, I served a true and complete copy of the Plaintiff's

OPPOSITION TO DEFENDANTS' MOTION TO DIMISS THE AMENDED

COMPLAINT AND COMPEL ARBITRATION, which opposition includes the Affidavit

of Terry George and the exhibits annexed thereto, and the Memorandum of Law in

Opposition, upon:

> NIA J.C. CASTELLY, ESQ.
> ROBERT W. RAY, ESQ.
> DONALD S. ZAKARIN, ESQ.
> Pryor Cashman LLP
> *Attorneys for Coqui Capital Management,*
> *LLC and other Defendants*
> 410 Park Avenue
> New York, New York 10022
> Tel.: (212) 421-4100
>
>
> GARY HOPPE, ESQ.
> Twomey, Hoppe & Gallanty, LLP
> 757 Third Avenue, 7th Floor
> New York, New York 10017
> Tel.: (212) 688-0400
> Fax: (212) 688-1929

by depositing same in a first class postpaid wrapper, properly addressed to the above

named person or attorney at the address designated by said person or attorney for that

purpose (or at that person's or attorney's last known address because no address was

designated), in a post office or official depository under the exclusive care and custody of

the United States Postal Service within the State of New York.

Sworn to before me on this
6th day of May, 2008

_____
Notary Public

_____
MARIBEL PINEDA

LASHINA WILLIAMS
Notary Public, State of New York
No. 01WI6033862
Qualified in Kings County
Commission Expires November 28, 20__

STEVEN WEINBERG, ESQ.
Gottesman, Wolgel, Malamy,
Flynn & Weinberg, P.C.
11 Hanover Square, 4th Floor,
New York, New York 10005
Tel.: (212) 495-0100
Fax: (212) 480-9797
E-mail: sweinberg@gottesmanlaw.com

ARLENE M. EMBREY, ESQ.
Trial Attorney
U.S. Small Business Administration
409 Third Street, S.W., Seventh Floor
Washington, D.C. 20416
Tel.:    (202) 205-6976
Fax:    (202) 481-0324
Email: arlene.embrey@sba.gov

*Attorneys for Plaintiff*
*The United States Small Business Administration as*
*Receiver of Coqui Capital Partners, L.P.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------x

UNITED STATES SMALL BUSINESS
ADMNINSTRATION AS RECEIVER FOR
COQUI CAPITAL PARTNERS, L.P.,

        Plaintiff,

   v.

COQUI CAPITAL MANAGEMENT, LLC., a New
York limited liability company; et al,

        Defendants.

-----------------------------------------------------x

Civil Action No. 08-978 (LTS)

*Affidavit of Service*

*Assigned to:*
Hon. Laura T. Swain, U.S.D.J.

STATE OF NEW YORK    )
                ) ss.:
COUNTY OF NEW YORK  )

      MARIBEL PINEDA, duly sworn, deposes and says:

    1.     I am over eighteen years of age; I am not a party to the above captioned

action, and reside in the State of New York.

2.    On May 6, 2008, I served a true and complete copy of the Plaintiff's

OPPOSITION TO DEFENDANTS' MOTION TO DIMISS THE AMENDED

COMPLAINT AND COMPEL ARBITRATION, which opposition includes the Affidavit

of Terry George and the exhibits annexed thereto, and the Memorandum of Law in

Opposition, upon:

> NIA J.C. CASTELLY, ESQ.
> ROBERT W. RAY, ESQ.
> DONALD S. ZAKARIN, ESQ.
> Pryor Cashman LLP
> *Attorneys for Coqui Capital Management,*
> *LLC and other Defendants*
> 410 Park Avenue
> New York, New York 10022
> Tel.: (212) 421-4100
>
>
> GARY HOPPE, ESQ.
> Twomey, Hoppe & Gallanty, LLP
> 757 Third Avenue, 7th Floor
> New York, New York 10017
> Tel.: (212) 688-0400
> Fax: (212) 688-1929

by depositing same in a first class postpaid wrapper, properly addressed to the above

named person or attorney at the address designated by said person or attorney for that

purpose (or at that person's or attorney's last known address because no address was

designated), in a post office or official depository under the exclusive care and custody of

the United States Postal Service within the State of New York.

Sworn to before me on this
6th day of May, 2008

_____
MARIBEL PINEDA

_____
Notary Public

LASHINA WILLIAMS
Notary Public, State of New York
No. 01WI6033862
Qualified in Kings County
Commission Expires November 28, 2009