Donald S. Zakarin (dzakarin@pryorcashman.com)
Nia J.C. Castelly (ncastelly@pryorcashman.com)
PRYOR CASHMAN LLP
410 Park Avenue
New York, New York 10022
(212) 421-4100

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES SMALL BUSINESS ADMINISTRATION AS RECEIVER FOR COQUI CAPITAL PARTNERS, L.P., <br><br> Plaintiff, <br><br> v. <br><br> COQUI CAPITAL MANAGEMENT, LLC, et al., <br><br> Defendants. | Civil Action No.: 08-CV-0978 (LTS) <br><br> Related Case No. 06-1564 <br><br> ECF Case |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANTS' MOTION TO DISMISS THE AMENDED
COMPLAINT AND COMPEL ARBITRATION**

Oral Argument Requested

## I.     THE RECEIVER'S MERITS ARGUMENTS ARE IRRELEVANT

Displaying a defensiveness that bespeaks a recognition that its claims are time barred, the Receiver's[1] opposition papers are focused on avoiding the five year limitation on capital calls found in the Subscription Agreements. *See* Plaintiff's Opposition Brief ("Opp. Br.") at 4-9. While a central issue in this matter, it has nothing to do with the motion before this Court, which is simply a motion to enforce Section 10.15 of the Amended Limited Partnership Agreement ("ALPA") requiring arbitration of all disputes.

Beyond focusing on the five year bar on capital calls, the Receiver's opposition consists of an effort to pretend that the ALPA is binding on Defendants but that the Receiver can ignore those provisions it finds inconvenient (such as the arbitration provision) coupled with an idiosyncratic interpretation of the word "notwithstanding," a word that has been clearly defined by dictionaries and case law for years. The Receiver equates "notwithstanding" with "subject to" rather than its established meaning of overriding or vitiating contrary provisions

### A.     The Merits of the Case Are Not At Issue In the Present Motion

A court may dismiss a case, or stay an action based on an agreement to arbitrate disputes. *See* Federal Arbitration Act ("FAA"), 9 U.S.C. § 3 (West 1999). The only questions to be decided on the present motion are whether a valid agreement to arbitrate exists and whether the claims at issue fall within the purview of that agreement. Thus, the Receiver's arguments devoted to evading the five year limitation on capital calls set forth in the Subscription Agreements are irrelevant.

---

[1]     The defined terms set forth in Defendants' Memorandum of Law In Support of Their Motion to Dismiss the Action, or in the Alternative, Stay the Action and Compel Arbitration ("Defs. Br.") are incorporated as if set forth fully herein.

Nevertheless, since the Receiver has devoted so much attention to the Subscription Agreements, it warrants a brief response. Pursuant to Section 10.16 of the ALPA, if the Subscription Agreements were part of the package of partnership documents submitted to the SBA when it approved Coqui as a SBIC, the Receiver is bound by the five year limit and its claims are time-barred. The Receiver does not deny having received the Subscription Agreements. Rather, it claims that Defendants have not proved that the Subscription Agreements were provided to the SBA (apparently forgetting that Defendants neither attempted to nor were required to prove an issue that has nothing to do with their motion). Opp. Br. at 5. However, Defendants are advised that the SBA received and therefore implicitly approved the Subscription Agreements and are confident that the evidence will confirm that advice.[2]

It is inconceivable that the SBA would not have inquired about the Subscription Agreements, which are standard and fundamental documents, had they not been delivered in connection with the original qualification of Coqui as an SBIC in April 2000.[3] Section 10.16 makes this merits issue straightforward, as even the Receiver tacitly admits: if the SBA received the Subscription Agreements in connection with its approval of Coqui as a SBIC, then the terms of the Subscription Agreements, including the five year limit on capital calls, are binding on the Receiver.

---

[2] Among the cases cited by the Receiver is *Chimicles, infra,* a case where the SBA sued to enforce Subscription Agreements. The Receiver knows that Subscription Agreements are part of the standard documentation for a limited partnership. Indeed, such agreements are so standard and ubiquitous that their absence from a package submitted for SBA approval would undoubtedly have provoked questions.

[3] In fact, provisions of the ALPA support the conclusion that the SBA received or had knowledge of the Subscription Agreements when it originally qualified Coqui. *See* ALPA Section 1.8(b)(x) (referring to the "material documents and agreements relating to the Partnership" and representing that the decision to invest is made on these documents, which included the Subscription Agreements); Section 5.06(b) (referencing the existence of limitations on the "amount of capital which a Partner is obligated to contribute (i) within any specified time period or (ii) before any specified date.") and Section 10.16.

The Receiver already has had the benefit of full discovery. It has had possession of all of Defendants' documents for over two years. In contrast, Defendants have had no discovery. Armed with complete access to the SBA's files and all records of Coqui, the Receiver's careful avoidance of any denial that it received the Subscription Agreements is glaring. Defendants expect to obtain evidence in the arbitration that will confirm that the SBA knew and approved of the Subscription Agreements at the time it approved Coqui as an Receiver.[4]

## II.   A BINDING AGREEMENT TO ARBITRATE THE RECEIVER'S CLAIMS EXISTS AND THE RECEIVER SHOULD BE COMPELLED TO SUBMIT TO ARBITRATION

The Receiver veers between arguing that its claims arise under the Subscription Agreements and arguing that they arise under the ALPA. Regardless, a valid agreement to arbitrate exists. As set forth in Defendants' moving Memorandum, the law is clear and unequivocal, binding agreements to arbitrate are to be enforced. *See* Defs. Br. at 9-14. In response, the Receiver advances tortured arguments seeking to evade the arbitration requirement. Hidden within its opposition is a concession that if a valid agreement to arbitrate exists between the Receiver and Defendants, the Receivers' claims fall within the provision, and as such, the Receiver should be compelled to submit to arbitration. *See* Defs. Br. at 14-17.

### A.   The Receiver's Interpretation of the Plain Language of the Arbitration Provision Is Untenable

As noted, one of the Receiver's main arguments is based on a bizarre interpretation of the term "notwithstanding" in Section 10.15 of the ALPA. Turning the meaning of this term on its

---

[4] The Receiver's arguments concerning what Coqui's principals did or did not say are meaningless. *See* Opp. Br. at 8-9. First, it was not incumbent on Coqui's principals to advance arguments to the SBA while trying to negotiate a more orderly wind-down of Coqui. Second, as the SBA fully knows, it was repeatedly told, prior to the receivership, that there was a five year limitation and that it had no right to seek additional capital. Third, as the Receiver so aptly points out yet repeatedly ignores, "[u]nambiguous written agreements should be enforced 'according to their terms' without the use of extrinsic evidence [such as the subsequent actions of the parties]." Opp. Br. at 6 (*citing Pereira v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 525 F. Supp. 2d 370, 375 (S.D.N.Y. 2007) (Swain, J)).

3

head, the Receiver argues that it means the arbitration provision is subordinate to Sections 10.13 and 10.14 of the ALPA.  *See* Opp. Br. at 10-11.  This interpretation is unsupportable, which would explain the absence of a single citation for this novel interpretation of a plain English word.  The term "notwithstanding" is synonymous with "in spite of" or "despite."  *See Commercial Union Ins. Co. v. M.V. Bremen Express*, 16 F. Supp. 2d 403, 407 (S.D.N.Y. 1998), *aff'd w'out op.*, 208 F.3d 202 (2d Cir. 2000) (determining that the phrase "[n]othwithstanding Article 2 hereof," in Article 8 of the contract at issue indicated the predominance of Article 8 over Article 2 and that Webster's Third New International Dictionary defined "notwithstanding" as "'[w]ithout prevention or obstruction from or by: in spite of.'").  *See also Premier Car Rental, Inc. v. Government Employees Ins. Co.*, 223 A.D.2d 629, 630-631, 637 N.Y.S.2d 177, 179 (2d Dep't 1996) ("notwithstanding" means "'without prevention or obstruction from or by; in spite of'").

      Thus, the plain meaning of Section 10.15 is that it overrides Sections 10.13 and 10.14.  Section 10.15 says that despite what Sections 10.13 and 10.14 provide, the parties agreed that "any dispute or disagreement concerning, pertaining or relating to [the ALPA] and/or any transactions, occurrences, communications or understandings (or lack of any of the foregoing) relating in any way to [the ALPA] shall be submitted to arbitration under the laws of the American Arbitration Association[.]"  ALPA § 10.15.

      The inclusion of boilerplate jurisdictional and venue provisions in the ALPA creates no exception to the arbitration provision.  *See Kvaerner ASA v. Bank of Tokyo-Mitsubishi, Ltd.*, 210 F.3d 262 (4th Cir. 2000) (holding that a consent to jurisdiction clause alone does not override an agreement to arbitrate defined claims); *Valdes v. Swift Transp. Co.*, 292 F. Supp. 2d 524, 531 (S.D.N.Y. 2003) (explaining that by entering into an arbitration agreement a plaintiff is deemed

4

to have waived the right to the jury trial, thus the inclusion of a waiver provision is redundant). *Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418 (11th Cir. 1990), cited by the Receiver, is completely inapposite. The arbitration provision in that case stated: "this Agreement to arbitrate . . . specifically does not prohibit you from pursuing any claim or claims arising under the federal securities laws in any court of competent jurisdiction." *Id.* at 1421 (emphasis added). No such carve out language exists in this case.[5] The Receiver's contention that the provisions in *Goldberg* are "nearly identical to the provisions in the ALPA" reflects either bad reading habits or an intention to mislead this Court. *See* Opp. Br. at 13.

The Receiver's conclusory "distinction" of *Preston v. Ferrer*, 128 S. Ct. 978 (2008), that "*Preston* is inapplicable to this action brought by the Receiver as there is no agreement to arbitrate disputes regarding collection of the private limited partners' unfunded investments" (Opp. Br. at 13), fails because, contrary to the Receiver's unsupported conclusion, Section 10.15 requires arbitration of all disputes. *See* Defs. Br. at 8 n. 11. The argument is built on the Receiver's inversion of the word "notwithstanding," which, contrary to the Receiver's contention, overrides sections 10.13 and 10.14 of the ALPA. As the Receiver concedes, once there is a valid agreement to arbitrate – and it is indisputable that there is such an agreement – it is the arbitrator's responsibility to decide the enforceability of the terms of the agreement, Opp. Br. at 13 (citing *Preston*, 128 S. Ct. at 981).

The Receiver also trots out selected canons of construction to argue that the "specific" language of the jurisdiction and venue provisions of the ALPA take precedence over the

---

[5] Moreover, several courts have held that even the presence of this language still does not allow a party to escape a broadly written arbitration clause. *See Scher v. Bear Stearns & Co.*, 723 F. Supp. 211 (S.D.N.Y. 1989).

5

"general" provisions of the arbitration provision. Opp. Br. at 14.[6] This too presumes the conclusion that Section 10.15 is general and Sections 10.13 and 10.14 are specific. Beyond the studied avoidance of established law favoring arbitration, the cases cited by the Receiver are wholly irrelevant.[7] *Eli Lilly do Brasil, Ltda. v. Federal Express Corp.*, 502 F.3d 78 (2d Cir. 2007), focused on the determination of the proper choice of law to be applied. The Receiver cites dicta in the dissent out of context, which relates to statutory interpretation. *See id.* at 85 ("My analysis begins with the Restatement provisions that specifically apply to conflicts in contract law because 'a specific statute controls over a general one.' [citations omitted]").

Here, it is the arbitration provision that is specific. Rather than a boilerplate venue and jurisdiction provision, it specifically identifies the arbitral forum for all disputes. It specifically overrides the more general Sections 10.13 and 10.14. Thus, *Loughman v. Unum Provident Corp.*, 536 F. Supp. 2d 371 (S.D.N.Y. 2008) actually supports Defendants' argument that the arbitration provision in the ALPA is enforceable. *See* Opp. Br. at 14 ("The Second Circuit and this Court have held that a specific provision takes precedence over a more general provision."). The parties to the ALPA specifically and unambiguously agreed that, "notwithstanding" contrary provisions, they would arbitrate "any dispute or disagreement concerning, pertaining or relating to [the ALPA] and/or any transactions, occurrences, communications or understandings (or lack of any of the foregoing) relating in any way to [the ALPA][.]"

---

[6] Another canon of construction ignored by the Receiver is that a later provision will control an earlier provision in an agreement. But here, there is really no need to refer to canons of construction because the language of Section 10.15, despite the Receiver's attempt to rewrite this provision, is completely clear.

[7] While the Receiver's citation to a quote from *New Hampshire Ins. Co. v. Canali Reinsurance Co.*, No. 03 Civ. 8889, 2004 WL 769775 (S.D.N.Y. Apr. 12, 2004) (Swain, J.) regarding narrow arbitration clauses is accurate, it is inapplicable because the arbitration provision found in the ALPA is indisputably a broad one. *See* Defs. Br. at 12.

### B. The Subscription Agreements and Guarantees Incorporate the ALPA By Reference

The Receiver first argues that its claims arise under the ALPA and that the Subscription Agreements are inapplicable (*See* Opp. Br. at 5-6) only to later argue that its claims arise under the Subscription Agreements and Guarantees and that these documents do not incorporate the arbitration provision of the ALPA, *see* Opp. Br. at 15-16. In fact, paragraph 7 of the Subscription Agreements explicitly incorporates the ALPA. George Aff., Exh. C at 6. Further, the ALPA, Subscription Agreements and Guarantees were executed as part of a single unified transaction and concern the subject matter of this action – the alleged obligation of Defendants to make capital contributions to Coqui; thus, the terms of the ALPA (including the arbitration provision) are incorporated. *Ameritrust Co. Nat'l Ass'n v. Chanslor*, 803 F. Supp. 893, 896 (S.D.N.Y. 1992) ("where two or more written instruments between the same parties concerning the same subject matter are contemporaneously executed, they will be read and interpreted together.") (internal quotations omitted). *See also* Defs. Br. at 11-12.

The single case cited by the Receiver is inapposite. *See* Opp. Br. at 15. First, the Amended Complaint reflects that the Receiver is suing under the ALPA, not under the Subscription Agreements. Second, the arbitration provision in *United States SBA v. Chimicles*, 447 F.3d 207 (3d Cir. 2006) only bound the General and Limited Partners, not the SBA. Here the arbitration provision applies to the <u>parties</u> to the agreement, which includes the Receiver and the SBA as either or both successor-in-interest to the General Partner or as a claimed third party beneficiary of the ALPA.

The Court's dicta in *Chimicles*, cited by the Receiver, is also of no moment. *See id.*, 447 F.3d at 211 ("we note that even if we were to assume that disputes arising under the subscription agreement were otherwise subject to mandatory arbitration, appellants were unable to explain at

7

oral argument why section 5.1.2 of the partnership agreement does not negate any obligation to arbitrate.").[8] The corresponding provision of the ALPA, Section 5.06(b), does not apply because here it is undisputed that the Receiver did not demand additional capital "before the liquidation of the Partnership[.]" *See* Opp. Br. at 7 n.4 ("[T]he liquidation of Coqui commenced April 29, 2005 and the earliest demand letter sent by the Receiver was sent May 8, 2006, over one year after Coqui was placed by its regulator into liquidation."). In any event, the determination of whether an argument has been foreclosed logically has nothing to do with the forum in which that determination should be made.

### C. Enforcement of the Arbitration Provision Does Not Violate the Exclusive Jurisdiction Provision of the SBIA

The exclusive jurisdiction provision in Section 311 of the Small Business Investment Act ("SBIA") does not override the strong federal policy in favor of arbitration. As the Supreme Court recently reinforced in *Preston v. Ferrer*, "the Federal Arbitration Act . . . establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." 128 S. Ct. at 981. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts <u>shall</u> direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). "This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim

---

[8] "Notwithstanding any provision in the Agreement to the contrary . . . in the event that the Partnership is subject to restricted operations . . . and prior to the liquidation of the Partnership the SBA requires the General Partner and the Private Limited Partners to contribute any amount of their respective Commitments not previously contributed to the Partnership, the obligation to make such contributions shall not be subject to any conditions set forth in the Agreement other than limitations on the amount of capital which a Partner is obligated to contribute (a) within any specified time period or (b) prior to any specified date." *Chimicles*, 447 F.3d at 211.

8

founded on statutory rights." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).

The FAA's mandate favoring arbitration may be overridden <u>only</u> by showing of a "contrary congressional command," present in the text or legislative history of a statute, indicating that Congress intended to limit or preclude waiver of the judicial remedies from the statutory rights at issue.[9] *Id.* at 226-27 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). The Receiver, as the party opposing arbitration, bears the burden of overcoming this FAA mandate, *id.* at 227, and has not done so.

The SBIA contains no indication that Congress intended to circumvent the FAA mandate by virtue of the language of Section 311. Section 311(b) of the SBIA states that district courts "<u>may</u> . . . take exclusive jurisdiction of the licensee or licensees and the assets thereof . . . ." 15 U.S.C. § 687c(b) (West 1997) (emphasis added). This permissive language drafted, as the Receiver admits, <u>after</u> the FAA was enacted, does not even remotely suggest that the strong federal policy in favor of enforcing agreements to arbitrate is vitiated. At most it authorizes a district court, in its discretion, to assume jurisdiction pursuant to Section 311 of the SBIA. *See Matsushita Electric Indus. Co. v. Epstein*, 516 U.S. 367, 384-85 (1997) (acknowledging that a statute conferring exclusive federal jurisdiction for a certain class of claims does not necessarily require resolution of those claims in a federal court, and that those claims may be resolved by arbitration) (citing *Shearson/American Express, Inc.*, 482 U.S. 220); *see also United States v.*

---

[9] In fact, the Supreme Court has found an arbitration clause not enforceable only where the statute contained an express waiver provision construed to forbid waiver of an exclusive jurisdiction provision. *See Shearson/American Express, Inc.*, 482 U.S. at 226-28. Even the presence of such a waiver provision has not always been held to preclude arbitration pursuant to a binding arbitration provision. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 518 (1974). No such express waiver provision exists in the SBIA.

*Royal Business Funds Corp.*, 29 B.R. 777, 780 (S.D.N.Y. 1983), *aff'd*, 724 F.2d 12 (2d Cir. 1983) (citing *United States v. Norwood Capital Corp.*, 273 F. Supp. 236, 242 (D.S.C. 1967)).

The legislative history is silent on the waiver of judicial remedies, such as arbitration, indicating only that, as several courts have recognized, Congress authorizes district courts to take exclusive jurisdiction where necessary "'to protect the assets pending the Small Business Administration's recovery on its investment, as well as to permit discovery of any past abuses of program funds.'" *Royal Business Funds*, 29 B.R. at 780 (quoting *Norwood Capital*, 273 F. Supp. at 240). Thus, there is no nothing in the legislative history that would compel this Court to override an express agreement and strong Federal policy based solely on the permissive language in Section 311 of the SBIA.

Section 10.15 is not contradicted or limited by any other provision of the ALPA. It is not overridden or written out of the ALPA by any provision of the SBIA. Therefore, the strong federal policy in favor of enforcing agreements to arbitrate dictates that the parties must submit to their dispute to arbitration pursuant to Section 10.15 of the ALPA.

**CONCLUSION**

For all of the reasons stated herein and in their previously submitted memorandum of law and declaration of Donald S. Zakarin, Defendants respectfully request that the Court dismiss the Receiver's Amended Complaint in its entirety and compel the Receiver to submit to arbitration in New York under the laws of the American Arbitration Association before an impartial arbitrator selected by the parties. Alternatively, in the event that this Court should determine not to dismiss this case, it should nonetheless be stayed pending an arbitration to be commenced by the SBA in its capacity as Receiver.

Dated: New York, New York
May 23, 2008

PRYOR CASHMAN LLP

By: /s/ Donald S. Zakarin
Donald S. Zakarin
dzakarin@pryorcashman.com
Nia J.C. Castelly
ncastelly@pryorcashman.com

410 Park Avenue
New York, New York 10022
(212) 421-4100

*Attorneys for Defendants*